IMMIGRATION AND NATURALIZATION SERVICE
*v.* DOHERTY

No. 90–925.  Argued October 16, 1991—Decided January 15, 1992

*i*

REHNQUIST, C. J., announced the judgment of the Court and delivered the opinion of the Court with respect to Part I, in which WHITE, BLACKMUN, O'CONNOR, and KENNEDY, JJ., joined, an opinion with respect to Part II, in which WHITE, BLACKMUN, and O'CONNOR, JJ., joined, and an opinion with respect to Part III, in which KENNEDY, J., joined. SCALIA, J., filed an opinion concurring in the judgment in part and dissenting in part, in which STEVENS AND SOUTER, JJ., joined, *post,* p. 329. THOMAS, J., took no part in the consideration or decision of the case.

*Deputy Solicitor General Mahoney* argued the cause for petitioner. On the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Roberts, Edwin S. Kneedler, Barbara L. Herwig,* and *John C. Hoyle.*

*Mary Boresz Pike* argued the cause for respondent. With her on the brief was *Arthur C. Helton.**

CHIEF JUSTICE REHNQUIST announced the judgment of the Court and delivered the opinion of the Court with respect to Part I, an opinion with respect to Part II, in which JUSTICE WHITE, JUSTICE BLACKMUN, and JUSTICE O'CONNOR join, and an opinion with respect to Part III, in which JUSTICE KENNEDY joins.

Respondent, Joseph Patrick Doherty, entered this country illegally in 1982. After more than eight years of proceedings concerning Doherty's status in the United States, the question presented here is whether the Attorney General abused his discretion in refusing to reopen the deportation proceedings against respondent to allow consideration of respondent's claims for asylum and withholding of deportation which he had earlier withdrawn. We conclude that the Attorney General did not abuse the broad discretion vested in him by the applicable regulations.

Respondent is a native of Northern Ireland and a citizen of both Ireland and the United Kingdom. In May 1980, he and fellow members of the Provisional Irish Republican Army ambushed a car containing members of the British Army and killed British Army Captain Herbert Richard Westmacott. He was tried for the murder of Westmacott in Northern Ireland. Before the court returned a verdict, he escaped from the maximum security prison where he was

---

*Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *David W. Rivkin, Michael W. Galligan, Lucas Guttentag, Steven R. Shapiro,* and *Carolyn Patty Blum;* for Amnesty International et al. by *Paul L. Hoffman;* for the International Human Rights Law Group by *Irwin Goldbloom;* for Members of the United States Senate et al. by *Carolyn Patty Blum, Kevin R. Johnson,* and *Joseph K. Brenner;* and for the United Nations High Commissioner for Refugees by *O. Thomas Johnson, Jr., Andrew I. Schoenholtz, Julian Fleet,* and *Ralph G. Steinhardt.*

held; the court found him guilty *in absentia* of murder and related charges and sentenced him to life imprisonment.

In 1982, respondent surreptitiously entered the United States under an alias. In June 1983, he was located by the Immigration and Naturalization Service (INS), which thereupon began deportation proceedings against him. Respondent applied for asylum under § 208 of the Immigration and Nationality Act, as added by the Refugee Act of 1980, 94 Stat. 105, 8 U. S. C. § 1158.[1] The immigration proceedings were suspended to allow completion of extradition proceedings, which were initiated by the United States at the request of the United Kingdom.

In December 1984, United States District Judge Sprizzo, acting as an Extradition Magistrate under 18 U. S. C. § 3184, held that respondent was not extraditable because his crimes fell into the political offenses exception to the extradition treaty between the United States and the United Kingdom. *In re Requested Extradition of Doherty*, 599 F. Supp. 270, 272 (SDNY 1984). The attempts of the United States to attack this conclusion collaterally were rebuffed. *United States* v. *Doherty*, 615 F. Supp. 755 (SDNY 1985), aff'd, 786 F. 2d 491 (CA2 1986).[2]

---

[1] Section 208 of the Immigration Act, 8 U. S. C. § 1158(a) provides, in pertinent part: "The Attorney General shall establish a procedure for an alien physically present in the United States . . . to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee . . . ." The term "refugee" is defined by 8 U. S. C. § 1101(a)(42)(A) as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ."

[2] Respondent, who has been confined since his arrest by the INS, has also twice unsuccessfully filed for habeas corpus relief. *Doherty* v. *Meese*, 808 F. 2d 938 (CA2 1986); *Doherty* v. *Thornburgh*, 943 F. 2d 204 (CA2 1991).

When the extradition proceedings concluded, the deportation proceedings against respondent resumed. On September 12, 1986, at a hearing before the Immigration Judge, respondent conceded deportability and designated Ireland as the country to which he be deported pursuant to 8 U. S. C. § 1253(a).[3] In conjunction with this designation, respondent withdrew his application for asylum and withholding of deportation. The INS unsuccessfully challenged respondent's designation on the basis that Doherty's deportation to Ireland would, in the language of § 1253(a), "be prejudicial to the interests of the United States." The Immigration Judge found that the INS had produced no evidence to support its objection to the designation and ordered that respondent be deported to Ireland. App. to Pet. for Cert. 158a. On March 11, 1987, the Board of Immigration Appeals (BIA) affirmed the deportation order, concluding that the INS had never before rejected a deportee's designation and that rejection of a deportee's country of designation is improper "in the absence of clear evidence to support that conclusion." *Id.*, at 155a.

The INS appealed the BIA's determination to the Attorney General pursuant to 8 CFR § 3.1(h)(iii) (1987).[4] While the order to deport respondent to Ireland was being reviewed by the Attorney General, respondent filed a motion to reopen his deportation proceedings on the basis that the

---

[3] Title 8 U. S. C. § 1253(a) provides, in part: "The deportation of an alien in the United States . . . shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States."

[4] Initially, the INS moved for reconsideration of the BIA's March 1987 decision based on new evidence in the form of an affidavit by the Associate Attorney General. The BIA reopened the appeal but refused to remand to the Immigration Judge, instead finding that the affidavit offered by the INS was not new evidence and, in any event, did not change the BIA's conclusion. App. to Pet. for Cert. 134a–142a.

Irish Extradition Act, implemented by Ireland in December 1987, constituted new evidence requiring that his claims for withholding of deportation and asylum now be reopened. In June 1988, Attorney General Meese reversed the BIA and ordered respondent deported to the United Kingdom. Respondent's designation was rejected by the Attorney General on the basis that respondent committed a serious crime in the United Kingdom and therefore to deport respondent to any country other than the United Kingdom to serve his sentence would harm the interests of the United States. The Attorney General remanded respondent's motion to reopen for consideration by the BIA.

The BIA granted respondent's motion to reopen, concluding that the 1987 Irish Extradition Act was a circumstance that respondent could not have been expected to anticipate, and that the result of his designation would now leave him to be extradited from Ireland to the United Kingdom, where he feared persecution. The BIA's decision to reopen was appealed by the INS and was reversed by Attorney General Thornburgh who found three independent grounds for denying Doherty's motion to reopen. The Court of Appeals for the Second Circuit reviewed both the order of Attorney General Meese which denied respondent's designation of Ireland as the country of deportation and Attorney General Thornburgh's order denying respondent's motion to reopen his deportation proceedings. It affirmed the Meese order, but by a divided vote reversed the Thornburgh order. *Doherty* v. *United States Dept. of Justice, INS*, 908 F. 2d 1108 (1990). Attorney General Thornburgh had abused his discretion in denying the motion to reopen, according to the Court of Appeals, because he had overturned the BIA's finding that respondent had produced new material evidence under an incorrect legal standard. The passing of the 1987 Irish Extradition Act in conjunction with Attorney General Meese's denial of Ireland as Doherty's country of deportation was

new evidence, which, according to the Court of Appeals, entitled Doherty to have his deportation proceedings reopened.

The Court of Appeals also held that Attorney General Thornburgh had erred in determining, on a motion for reopening, that respondent was not entitled to the ultimate relief requested. Citing this Court's decision in *INS* v. *Abudu*, 485 U. S. 94 (1988), the Court of Appeals held that such a determination could not be made for the mandatory relief of withholding of deportation, and that once an alien establishes a prima facie case for withholding of deportation and brings new evidence, the Attorney General is without discretion to deny the motion to reopen. In addition, the Court of Appeals held that the Attorney General had abused his discretion by relying on foreign policy concerns in denying respondent's motion to reopen his claim for asylum. After examining the legislative history of § 208 of the Immigration and Nationality Act, the Court of Appeals concluded that Congress intended foreign policy interests to play no role in asylum determinations. The Attorney General had abused his discretion "in denying Doherty's application for reasons that congress sought to eliminate from asylum cases . . . ." 908 F. 2d, at 1121.

We granted certiorari, 498 U. S. 1081 (1991), and now decide that the Court of Appeals placed a much too narrow limit on the authority of the Attorney General to deny a motion to reopen deportation proceedings. The Attorney General based his decision to deny respondent's motion to reopen on three independent grounds. First, he concluded that respondent had not presented new evidence warranting reopening; second, he found that respondent had waived his claims to asylum and withholding of deportation by withdrawing them at his deportation hearing in September 1986; and, third, he concluded that the motion to reopen was properly denied because Doherty's involvement in serious nonpolitical crimes in Northern Ireland made him statutorily ineli-

gible for withholding of deportation,[5] as well as undeserving of the discretionary relief of asylum. Because we conclude that the Attorney General did not abuse his discretion in denying the motion to reopen either on the first or second of these grounds, we reverse the Court of Appeals' decision, and need not reach the third ground for denial of reopening relied upon by the Attorney General.

I

This is the fifth case in the last decade in which we have dealt with the authority of the Attorney General and the BIA to deny a motion to reopen deportation proceedings. These cases establish several propositions. There is no statutory provision for reopening of a deportation proceeding, and the authority for such motions derives solely from regulations promulgated by the Attorney General. *INS* v. *Rios-Pineda*, 471 U. S. 444, 446 (1985). The regulation with which we deal here, 8 CFR § 3.2 (1987), is couched solely in negative terms; it requires that under certain circumstances a motion to reopen be denied, but does not specify the conditions under which it shall be granted:

"Reopening or reconsideration.

---

[5] Title 8 U. S. C. § 1253(h) provides in pertinent part:

"Withholding of deportation or return

"(1) The Attorney General shall not deport or return any alien . . . to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

"(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

"(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion; [or]

.        .        .        .        .

"(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States . . . ."

". . . Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ."

The granting of a motion to reopen is thus discretionary, *INS v. Phinpathya*, 464 U. S. 183, 188, n. 6 (1984), and the Attorney General has "broad discretion" to grant or deny such motions, *Rios-Pineda, supra,* at 449. Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. *INS v. Abudu,* 485 U. S., at 107–108. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States. See *INS v. Rios-Pineda, supra,* at 450. In *Abudu, supra,* we stated that there were "at least" three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought. *Abudu, supra,* at 104–105. When denial of a motion to reopen is based on the last two of these three grounds, abuse of discretion is the proper standard of review. 485 U. S., at 105.

We also noted in *Abudu* that the abuse-of-discretion standard applies to motions to reopen "regardless of the underlying basis of the alien's request [for relief]." *Id.,* at 99, n. 3.[6] In *Abudu* itself, the alien's claim for asylum was made after

---

[6] This is so, in part, because every request for asylum made after institution of deportation proceedings is also considered as a request for withholding of deportation under 8 U. S. C. § 1253(h) (1988 ed. and Supp. II). 8 CFR § 208.3(b) (1983).

an order of deportation was issued, and therefore by operation of the regulations, the alien had brought a claim for withholding of deportation as well. *Ibid.*[7] The discretion which we discussed in *Abudu*, therefore, applies equally to motions to reopen claims for asylum and claims for withholding of deportation.

We think that the proper application of these principles leads inexorably to the conclusion that the Attorney General did not abuse his discretion in denying reopening either on the basis that respondent failed to adduce new material evidence or on the basis that respondent failed to satisfactorily explain his previous withdrawal of these claims.

## II

The Attorney General determined that neither the denial of respondent's designation of Ireland as the country of deportation, nor the change in Irish extradition law, qualified as new material evidence to support reopening of respondent's deportation proceedings. He explained that since the very same statute which allows the alien to designate a country for deportation also authorizes the Attorney General to oppose that designation, the eventual denial of respondent's designation could not be a "new fact" which would support reopening. He stated that "it is inconceivable that anyone represented by counsel could not know that there always existed a risk that the Attorney General would deny respondent's deportation to Ireland to protect the interests of the United States." App. to Pet. for Cert. 66a. This conclusion was based on 8 U. S. C. § 1253(a), which provides that

---

[7] We concluded that the BIA was within its discretion to deny respondent's motion to reopen both claims for relief because "respondent had not reasonably explained his failure to apply for asylum prior to the completion of the initial deportation proceeding," *INS* v. *Abudu*, 485 U. S., at 111, not because the alien was not entitled on the merits to the relief sought. Cf. *post*, at 333–334 (SCALIA, J., concurring in judgment in part and dissenting in part).

the Attorney General shall direct the alien be deported to the country designated by the alien "if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States." In addition, in this case, the INS had objected to respondent's designation at the very hearing at which his selection of Ireland as the country of deportation was made.[8] The Attorney General also concluded that his rejection of the designated country was not a "fact," reasoning that "[t]he ultimate decision in an administrative process cannot itself constitute 'new' evidence to justify reopening. If an adverse decision were sufficient, there could never be finality in the process." App. to Pet. for Cert. 67a. He therefore concluded that the Government's successful opposition to respondent's designation was neither "new" nor "evidence."

The Attorney General also decided that Ireland's implementation of its 1987 Extradition Act was neither relevant nor new. By the time he issued his denial of the motion to reopen, the question was whether respondent should be deported to the United Kingdom. And the treaty upon which the Irish Extradition Act was based had been signed six months *before* respondent withdrew his asylum and withholding of deportation claims in 1986. He also noted that a change in law ordinarily does not support a motion to reopen unless the change pertains to the rules of the proceeding at which deportation was ordered.

The Court of Appeals took the view that the Attorney General's insistence that the grounds adduced for reopening have been "unforeseeable" was supported by "[n]either the regulations nor the applicable decisional law." 908 F. 2d, at

---

[8] At the deportation hearing, counsel for the INS stated that the INS "oppose[d] the designation of the Republic of Ireland on the ground that the respondent's deportation to the Republic of Ireland would be prejudicial to the interest of the United States" and designated the United Kingdom as "an alternate country of deportation." App. 34.

1115. But the regulation here in question, 8 CFR § 3.2 (1987), provides in part that motions to reopen in deportation proceedings "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." The Court of Appeals seized upon a sentence in our opinion in *Abudu* stating that the issue in such a proceeding is whether the alien has "reasonably explained his failure to apply for asylum initially" and has indeed offered "previously unavailable, material evidence," *Abudu*, 485 U. S., at 104–105, as negating a requirement of unforeseeability. But this sentence, we think, cannot bear that construction, particularly when the same opinion sets out verbatim the applicable regulation quoted above. It is not at all uncommon to require that motions to reopen proceedings be based on matter which could not reasonably have been previously adduced; see, *e. g.*, Fed. Rule Civ. Proc. 60(b)(2) ("newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . ."). We hold, for the reasons stated in the opinion of the Attorney General, that it was well within his broad discretion in considering motions to reopen to decide that the material adduced by respondent could have been foreseen or anticipated at the time of the earlier proceeding.[9] The alien, as we discuss more fully in Part III, *infra*, is allowed to plead inconsist-

---

[9] The Court of Appeals, 908 F. 2d 1108, 1115–1116 (CA2 1990), and JUSTICE SCALIA, *post*, at 338–339, suggest that the Attorney General's denial of respondent's designation of Ireland was not even foreseeable at the time of the deportation hearing. Given the statutory language of 8 U. S. C. § 1253(a) and the position taken by the INS at the deportation hearing, we find it unrealistic to assume that respondent was unaware of the possibility that his designation of Ireland might prove ineffective notwithstanding the fact that Ireland was willing to receive him. The Attorney General certainly does not abuse his discretion in failing to take such a view of the events in this case.

ently in the alternative in the original proceeding and thereby raise any claims that are foreseeable at that time.

The Court of Appeals also took the view that since the BIA had granted the motion to reopen, the Attorney General was in some way limited in his authority to overturn that decision. But the BIA is simply a regulatory creature of the Attorney General, to which he has delegated much of his authority under the applicable statutes. He is the final administrative authority in construing the regulations, and in deciding questions under them. See *INS* v. *Jong Ha Wang*, 450 U. S. 139, 140 (1981) *(per curiam)*. The mere fact that he disagrees with a conclusion of the BIA in construing or applying a regulation cannot support a conclusion that he abused his discretion.

III

The Attorney General found, as an independent basis for denying reopening, that respondent had waived his claims for relief by withdrawing them at the first hearing to obtain a tactical advantage. We disagree with the Court of Appeals' rejection of this reason to deny reopening. 908 F. 2d, at 1122. The Attorney General's reasoning as to respondent's waiver of his claims is the functional equivalent of a conclusion under 8 CFR § 208.11 (1987) that respondent has not reasonably explained his failure to pursue his asylum claim at the first hearing. In other words, the Attorney General found that withdrawing a claim for a tactical advantage is not a reasonable explanation for failing to pursue the claim at an earlier hearing.[10]

---

[10] Although 8 CFR §§ 208.11 and 3.2 (1987) are nominally directed respectively at motions to reopen asylum claims and withholding of deportation claims, they are often duplicative in that an offer of material evidence which was not available at the time of the hearing would, in most cases, also be an adequate explanation for failure to pursue a claim at an earlier proceeding. As we explained in *INS* v. *Abudu*, 485 U. S. 94, 99, n. 3 (1988), the "application of 8 CFR § 208.11 (1987), which on its face applies only to asylum requests on reopening, will also usually be dispositive of

Precisely because an alien may qualify for one form of relief from deportation, but not another, the INS allows aliens to plead in the alternative in immigration proceedings.[11] There was nothing which prevented respondent from bringing evidence in support of his asylum and withholding of deportation claims at his first deportation proceeding, in case the Attorney General did contest his designation of Ireland as the country to which he be deported.[12] Respondent chose, however, to withdraw those claims, even when expressly questioned by the Immigration Judge.[13]

The Court of Appeals rejected this ground for the Attorney General's denial of reopening on the ground that his reasoning was "incompatible with any motion to reopen . . . ." 908 F. 2d, at 1122. It may be that the Attorney General has adopted a narrow, rather than a broad, construction of the

---

its decision whether to reopen to permit a withholding of deportation request." See *supra*, at 324. The opportunity for the alien to plead in the alternative is an ample basis for the Attorney General to find, without abusing his discretion in a situation such as the present one, that the failure of the alien to so plead has not been reasonably explained.

[11] Indeed, in *Abudu, supra*, the alien had moved to reopen his deportation proceedings to pursue claims for asylum and withholding of deportation based on persecution he feared in his home country of Ghana in the event that his designation of England as the country of deportation proved ineffective. 485 U. S., at 97.

[12] The Immigration Judge did prevent the INS from presenting evidence of additional grounds on which respondent could be deported once respondent had conceded deportability, but there is no indication that had respondent not withdrawn his claims at the September 12, 1986, proceeding, the Immigration Judge would not have allowed respondent to bring evidence in support of his application for asylum and withholding of deportation. App. to Pet. for Cert. 157a.

[13] At the September 12, 1986, hearing, the Immigration Judge asked respondent's counsel: "I just want to be sure . . . there won't be any application for political asylum and/or withholding of deportation, correct?" to which respondent's counsel replied: "That is correct." The Immigration Judge asked again: "In other words, there is no application for relief from deportation that you will be making?" to which the response from counsel was again in the affirmative. App. 32.

regulations governing reopening, but nothing in the regulations forbids such a course. The Attorney General here held that respondent's decision to withdraw certain claims in the initial proceedings was a "deliberate tactical decision," and that under applicable regulations those claims could have been submitted at that time even though inconsistent with other claims made by respondent. We hold that this basis for the Attorney General's decision was not an abuse of discretion.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE SCALIA, with whom JUSTICE STEVENS and JUSTICE SOUTER join, concurring in the judgment in part and dissenting in part.

I agree that the Attorney General's broad discretion to deny asylum justified his refusal to reopen the proceedings so that Doherty might apply for that relief; but a similar rationale is not applicable to the denial of reopening for the withholding-of-deportation claim. (Part I, *infra.*) In my view the Immigration and Naturalization Service (INS) is wrong in asserting that there was waiver or procedural default of the withholding claim (Part II); and the Attorney General abused his discretion in decreeing that, for those or other reasons unrelated to the merits of the withholding claim, Doherty would not be allowed reopening to apply for that relief (Part III). There may be merit in the INS' alternative argument that denial of reopening for the withholding claim was proper because Doherty was statutorily ineligible for withholding; whether that is so cannot be determined without a detailed review of the factual record. (Part IV.)

## I

I do not question the Court's premise that the decision whether to permit reopening of an immigration proceeding is discretionary. *Ante*, at 323. Even discretion, however, has its legal limits. The question before us here is whether the decision not to permit reopening in the present case was an abuse of discretion according to those standards of federal administration embodied in what we have described as "the 'common law' of judicial review of agency action," *Heckler* v. *Chaney*, 470 U. S. 821, 832 (1985). If it was such an abuse of discretion, courts are commanded by the judicial review provisions of the Administrative Procedure Act (APA) to "hold [it] unlawful and set [it] aside." 5 U. S. C. § 706(2). (Although the detailed hearing procedures specified by the APA do not apply to hearings under the Immigration and Nationality Act (INA), see *Marcello* v. *Bonds*, 349 U. S. 302 (1955), the judicial review provisions do, see *Shaughnessy* v. *Pedreiro*, 349 U. S. 48 (1955).)[1]

Whether discretion has been abused in a particular case depends, of course, upon the scope of the discretion. It is tempting to believe, as the Court does, that the Attorney General's discretion to deny reopening is extremely broad, simply because the term "reopening" calls to mind the reopening of a final judgment by a court—a rarely accorded matter of grace. In fact, however, the nature of the INS regulations is such that the term "reopening" also includes,

---

[1] *Pedreiro* remains the law, although the particular mode of APA review at issue in the case—an action for injunctive relief in federal district court—has been eliminated by § 106 of the INA, 8 U. S. C. § 1105a, which "replaced it with direct review in the courts of appeals based on the administrative record." *Agosto* v. *INS*, 436 U. S. 748, 752–753 (1978). See 5 U. S. C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction").

to a large extent, what is in the judicial context the much more common phenomenon called "remand for further proceedings." Under the INS system, reopening is the sole means of raising certain issues that acquire legal relevance or practical importance only by virtue of the decision on appeal. A remand for that purpose often requires a "reopening" of the original hearing, and may be expressly denominated as such. See, e. g., *Matter of Doural*, 18 I. & N. Dec. 37 (BIA 1981). Permission to "reopen" in this sense cannot be denied with the breadth of discretion that the Court today suggests.

A second reason that the Court mistakes the scope of the discretion at issue here is that it relies upon "broad discretion" statements in cases such as *INS* v. *Rios-Pineda*, 471 U. S. 444, 449 (1985), which involved reopening in order to apply for substantive relief that was *itself* subject to the discretion of the Attorney General. That is not the case here. Section 243(h)(1) of the INA, as amended, provides that, subject to four enumerated exceptions:

> "The Attorney General *shall not* deport or return any alien (other than an alien described in section 241(a)(4)(D) [8 U. S. C. § 1251(a)(4)(D)]) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U. S. C. § 1253(h)(1) (1988 ed., Supp. II) (emphasis added).

The imperative language of this provision is not an accident. As we recognized in *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 428–429 (1987), the nondiscretionary duty imposed by § 243(h) parallels the United States' mandatory *nonrefoulement* obligations under Article 33.1 of the United Nations Convention Relating to the Status of Refugees, 189 U. N. T. S. 150, 176 (1954), reprinted in 19 U. S. T. 6259, 6276,

T. I. A. S. No. 6577 (1968).[2]   Before 1980, § 243(h) merely "authorized" the Attorney General to withhold deportation in the described circumstances, but did not require withholding in any case.   8 U. S. C. § 1253(h) (1976 ed., Supp. III).   We presumed in *Cardoza-Fonseca, supra,* at 429, however, that after 1968, when the United States acceded to this provision of the Convention, the Attorney General "honored the dictates" of Article 33.1 in administering § 243(h).   In 1980 Congress removed all doubt concerning the matter by substituting for the permissive language of § 243(h) the current mandatory provision, "basically conforming it to the language of Article 33 [of the Convention]."   *INS* v. *Stevic,* 467 U. S. 407, 421 (1984).

Because of the mandatory nature of the withholding-of-deportation provision, the Attorney General's power to deny withholding claims differs significantly from his broader authority to administer discretionary forms of relief such as asylum and suspension of deportation.   Our decision in *INS* v. *Abudu,* 485 U. S. 94 (1988), reflects this.   We there identified three independent grounds upon which the Board of Immigration Appeals (BIA) may deny a motion to reopen:

> "First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought. . . . Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence, 8 CFR § 3.2 (1987), or, in an asylum application case, that the movant has not reasonably explained his

---

[2] Article 33.1 provides:

"No Contracting State shall expel or return (*'refouler'*) a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion."

The United States was not a signatory to the 1954 Convention, but agreed to comply with certain provisions, including Article 33.1, in 1968, when it acceded to the United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U. S. T. 6223, 6225, T. I. A. S. No. 6577.

failure to apply for asylum initially, 8 CFR § 208.11 (1987). . . . Third, in cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and adjustment of status, *but not withholding of deportation*), the BIA may leap ahead, as it were, over the two threshold concerns . . . , and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *Id.*, at 104–105 (emphasis added).

The first two grounds (prima facie case and new evidence/reasonable explanation) are simply examples of, respectively, the broader grounds of statutory ineligibility and procedural default. The third ground reflects an understanding that the Attorney General's power to grant or deny, as a discretionary matter, various forms of nonmandatory relief includes within it what might be called a "merits-deciding" discretion to deny motions to reopen, even in cases where the alien is statutorily eligible and has complied with the relevant procedural requirements. This third ground validates, in my view, the Attorney General's denial of reopening with respect to Doherty's claim for asylum, which is a nonmandatory remedy, 8 U. S. C. § 1158(a). Irrespective of foreign policy concerns and regardless of whether Doherty's crimes were "political," it was within the Attorney General's discretion to conclude that Doherty is a sufficiently unsavory character not to be granted asylum in this country.

But as the emphasized phrase in the above-quoted excerpt from *Abudu* suggests, there is no analogue to this third ground in the context of mandatory relief. See also 485 U. S., at 106 ("[Our prior decisions] have served as support for an abuse-of-discretion standard of review for the third type of denial, where the BIA simply refuses to grant relief *that is itself discretionary in nature,* even if the alien has surmounted the requisite thresholds . . ...") (emphasis added). There is no "merits-deciding" discretion to deny reopening in the context of withholding of deportation. The Attorney

General could not deny reopening here—as he could in *Abudu, Rios-Pineda,* and the other case cited by the Court, *INS* v. *Phinpathya,* 464 U. S. 183 (1984)—simply because he did not wish to provide Doherty the relief of withholding.

## II

The INS puts forward three procedural bases for rejecting Doherty's motion to reopen.   In my view none is valid.

### A

The Attorney General asserted, as one of his reasons for denying the reopening—a reason only two Members of the Court accept, *ante,* at 327, 329—that Doherty "waived" his claims by withdrawing them at his deportation hearing.   I do not see how that can be.   The deportation proceeding had begun by the filing and service of an order to show cause why Doherty should not be deported, which order clearly contemplated that he would be deported to the United Kingdom.   He initially responded to this order (and to the United Kingdom's simultaneous efforts to obtain extradition) by requesting asylum, and under 8 CFR § 208.3(b) (1983), this request was also treated as an application for withholding of deportation under § 243(h) of the INA.   After the extradition proceedings had concluded in his favor, Doherty changed his mind and sought to withdraw the request and application, concede deportability, and designate Ireland as his country of deportation, pursuant to 8 U. S. C. § 1253(a).   (Doherty's motive, apparently, was to get the deportation hearing over and himself out of the country quickly, before conclusion of a new extradition treaty between the United States and the United Kingdom.)   I would agree that when this withdrawal was permitted by the Immigration Judge (IJ), it would have constituted a waiver of Doherty's right to withholding *if* some regulation precluded resubmission of a withdrawn application.   No such regulation exists, however; the withdrawal of a withholding application no more prevents later

reapplication than the withdrawal of an application for Social Security benefits prevents later reapplication.

In addition to the mere fact of withdrawal, there was the following exchange between the IJ and counsel for Doherty:

> "Q. . . . I just want to be sure . . . there won't be any application for political asylum and/or withholding of deportation, correct?
>
> "A. That is correct.
>
> "Q. No application for voluntary departure?
>
> "A. That is correct.
>
> "Q. In other words, there is no application for relief from deportation that you will be making?
>
> "A. That is correct."   App. 32.

The IJ engaged in this questioning in order to determine whether he would accept the proposal of Doherty's counsel to concede deportability and designate a country, instead of proceeding with further proof of deportability.   In that context, the only commitment reasonably expressed by the above-quoted exchange, it seems to me, was a commitment not to seek withholding *if the proposed designation was allowed.*   Doherty thereby waived, I think, the right to seek withholding if the United Kingdom should be specified as the "alternate" destination and if Ireland, though *accepted* as his designated country of deportation, should refuse to accept him.   This is confirmed by the following exchange between the IJ and Doherty's counsel later in the hearing, after the Government had requested specification of the United Kingdom as the "alternate" destination:

> "Q. And, what about the other issue about the alternate designation?   What if Eire doesn't accept him?
>
> "A. Your Honor, we are assured that Ireland will accept him and that there is no basis under Irish law not to accept him.

"Q. All right. So, you have no objection, then, to the United Kingdom and Colonies being designated as an alternate?

"A. That's correct, Your Honor." *Id.*, at 42.

That much of a waiver was implicit in counsel's commitment not to raise a withholding claim if the proposed concession of deportability and designation of country were accepted. But I do not think one can reasonably find in the record *any* waiver, *any* commitment as to what Doherty would do, if the proposed designation of country was *not* accepted—which is what ultimately happened here.

THE CHIEF JUSTICE, joined by JUSTICE KENNEDY, suggests another, more subtle, theory of waiver: Doherty waived his legal right to withholding because he did not apply for it as soon as possible. "There was nothing which prevented respondent" from making his withholding claim against the United Kingdom *as the specified alternate country of deportation, ante,* at 328; "[r]espondent chose, however, to withdraw" that claim, *ibid.;* so it was reasonable for the Attorney General to prevent him from making any withholding claim *against the United Kingdom in any context.* To state this argument is to expose its frailty; it simply does not follow. Unless there is some rule that says you must object to a country named in any capacity as soon as the opportunity presents itself, there is no apparent reason why the failure to do so should cause the loss of a legal right. THE CHIEF JUSTICE suggests that there *is* such a rule—viz., 8 CFR § 208.11 (1987), which requires that aliens who request reopening for relief from deportation must "reasonably explain the failure to request" that relief "prior to the completion of the exclusion or deportation proceeding." Unfortunately, however, § 208.11 applies *only to asylum.* Far from establishing a "raise-it-as-soon-as-possible" rule for withholding claims, this provision by negative implication dis-

claims it.[3]   In any case, even if a "reasonable explanation" requirement did exist, it was surely arbitrary and therefore unlawful for the Attorney General to say that the following did not qualify: "I did not raise it earlier because I agreed I would abstain from doing so in exchange for acceptance of my concession of deportability and designation of Ireland; only when that acceptance was withdrawn did I withdraw my abstention; and until then the claim had absolutely no practical importance."   If that is not well within the term "reasonably explain," the words of the regulation are a sham and a snare.   To be sure, Doherty did, as the Attorney General said, make a "deliberate tactical decision" not to seek withholding from the United Kingdom as the specified alternate.   But there is nothing unworthy about deliberate tactical decisions; waivers are not to be slapped upon them as penalties, but only to be discerned as the reasonable import

---

[3] THE CHIEF JUSTICE seeks to enlist the support of *INS* v. *Abudu*, 485 U. S. 94 (1988), for the proposition that—*despite* this negative implication—the requirement applies to withholding claims as well. *Ante*, at 327–328, n. 10, quoting *Abudu*'s statement that "the . . . application of 8 CFR § 208.11 (1987), which on its face applies only to asylum requests on reopening, will also usually be dispositive of its decision whether to reopen to permit a withholding of deportation request," 485 U. S., at 99, n. 3. This misses the whole point of the *Abudu* footnote, which is that *since* reopening for an asylum request automatically reopens for a withholding claim; and *since* the other requirements for withholding are either the same as or more stringent than the requirements for asylum; the single *more rigorous* asylum requirement—the "reasonable explanation" provision of § 208.11—will normally, as a practical matter, decide not only whether reopening for asylum but also whether reopening for withholding will be granted. *Abudu* itself proved the point: The Court of Appeals had granted reopening as to the withholding claim only because it had decided that reopening was required for the asylum request. *Abudu* v. *INS*, 802 F. 2d 1096, 1102 (CA9 1986).   Once we decided the latter reopening was in error because the BIA had properly denied it on § 208.11 grounds, the piggybacked reopening for withholding automatically became error as well.

of the action taken, or as the consequence prescribed by law. There was no waiver here.

## B

Another reason the Attorney General gave for denying reopening—and which the plurality accepts, see *ante*, at 324, 326—is that Doherty's December 1987 motion failed to comply with the regulatory requirements that it identify "new facts to be proved at the reopened hearing," 8 CFR § 3.8(a) (1987), and that it show the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing," § 3.2. The Court of Appeals concluded that Doherty had satisfied this burden by establishing that there had been a material change in Irish law, and that Attorney General Meese's order had subsequently changed Doherty's designated country of deportation to one in which he believed he would be subject to persecution. 908 F. 2d 1108, 1115–1116 (CA2 1990).

I agree with the INS that the asserted change in Irish law does not satisfy the reopening requirements because it was not "material" at the time the BIA first ruled on the motion to reopen in November 1988. By then Attorney General Meese had already ordered Doherty deported to the United Kingdom instead of Ireland, and any change in Irish law was no more relevant to his withholding claim than would be a change in the law of any other country to which he was not being returned. But the Attorney General's alteration of Doherty's designated country of deportation is another matter. Of course this is not what one would normally think of as a "new fac[t] to be proved at the reopened hearing" or "evidence . . . to be offered." But the words can technically reach that far, and unless they are given such an expansive meaning, the regulations make no sense because they do not allow obviously necessary remands. Suppose, for example, that the Attorney General had changed Doherty's primary destination, not to the United Kingdom, but to some country that the IJ had not designated as an alternate destination.

Doherty would surely be entitled to reopening for the purpose of applying for withholding of deportation to that country, even though he might be able to present no "new fac[t]" or "evidence [that] . . . was not available" other than the altered disposition. The INS concedes, moreover, that a change in our immigration laws after deportation has been ordered is a proper basis for reopening—yet that is equally difficult to describe as a "new fac[t]" or "evidence."

The Attorney General argued, and the INS repeats the argument here, that "[t]he ultimate decision in an administrative process cannot itself constitute 'new' evidence to justify reopening," since "[i]f an adverse decision were sufficient, there could never be finality in the process." That would be true only if a change of outcome on appeal were *always* a basis for reopening, but the question here is whether it may *sometimes* be. There is obviously no great practical difficulty in that. This Court itself, in reversing a judgment, frequently remands for further proceedings that our new determination has made necessary.

## C

The INS made at oral argument a contention that is to be found neither in the reasoning of the Attorney General in denying the reopening nor even in the INS' briefs: that under INS procedures Doherty was not only *permitted* but was actually *required* to present his claim for withholding during the deportation hearing, on pain of losing it. The belated discovery of this point renders it somewhat suspect, and the INS did not even cite any specific regulation upon which it is based. Presumably, however, it rests upon 8 CFR § 242.17(e) (1986), which provides that "[a]n application under this section shall be made only during the hearing . . . ." The section includes subsection 242.17(c), which provides that the IJ shall specify a country, or countries in the alternate, to which the respondent will be sent if he declines to designate one, or if the country of his desig-

nation will not accept him or fails to provide timely notice of acceptance.[4]  It then continues: "The respondent shall be advised that pursuant to section 243(h) of the [INA] he may apply for temporary withholding of deportation to the country or countries specified by the special inquiry officer [*i. e.*, Immigration Judge] . . . ."[5]  In my view this provision simply means that the respondent must accept the default specifications of the IJ unless he objects to them at the hearing. (Doherty chose not to do so because, having already received assurances from the Irish Government, he had no concern that the default specification would ever take effect and did not wish to protract the proceeding.)  The provision in my view does *not* mean what the INS now asserts (if this is the regulation it has in mind): that if a respondent fails to object to a particular country as a default destination, he cannot later object when that country is substituted as his primary

---

[4] The deportation order in this case faithfully followed this provision:
"IT IS ORDERED that the respondent be deported to Eire on the charge contained in the Order to Show Cause.
"IT IS FURTHER ORDERED that if Eire advises the Attorney General that it is unwilling to accept respondent into its territory or fails to advise the Attorney General within three months following original inquiry whether it will or will not accept respondent into its territory, respondent shall be deported to the United Kingdom and Colonies."

[5] The entire relevant portion of § 242.17(c) provides:
"The special inquiry officer shall notify the respondent that if he is finally ordered deported his deportation will in the first instance be directed pursuant to section 243(a) of the [INA] to the country designated by him and shall afford the respondent an opportunity then and there to make such designation.  The special inquiry officer shall then specify and state for the record the country, or countries in the alternate, to which respondent's deportation will be directed pursuant to section 243(a) of the [INA] if the country of his designation will not accept him into its territory, or fails to furnish timely notice of acceptance, or the respondent declines to designate a country.  The respondent shall be advised that pursuant to section 243(h) of the [INA] he may apply for temporary withholding of deportation to the country or countries specified by the special inquiry officer and may be granted not more than ten days in which to submit his application."  8 CFR § 242.17(c) (1986).

destination. For when he objects to a country that has been substituted as the primary destination, it is no longer "withholding of deportation to the country or countries specified by the special inquiry officer" *under § 242.17(c)* that he is applying for, and hence it is no longer "[an] application under this section."

This reading causes the provision to produce the consequence that acquiescence ordinarily produces in litigation: The litigant must live with the disposition acquiesced in, here the specification of *default* destinations. An agency wishing acquiescence to entail something more—wishing to change the normal rule from "object to the disposition now, or object never" to "object to the country you have an opportunity to object to now, or object never"—can be expected to describe that unusual arrangement with greater clarity than this provision contains. I am not prepared to find, on the basis of a default theory not mentioned by the Attorney General when he denied reopening, first put forward by counsel in oral argument at the very last stage of litigation, and never explicitly attributed to this particular regulation as its source, that this is what the INS interprets the provision to mean. Indeed, I have some doubt whether the first-ever, unforewarned adoption of that interpretation to produce the automatic cutoff of a statutorily conferred right would be lawful. Cf. *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 294–295 (1974). I have no doubt whatever, however, that it would be an abuse of discretion to deny reopening if such a surprise cutoff should occur.

### III

I have concluded that the denial of reopening in this case was justified neither by any of the theories of waiver and procedural default asserted by the INS (Part II), nor by the Attorney General's "merits-deciding" discretion discussed in *Abudu* (Part I). Even so, it might be said, the act of reopening a concluded proceeding is *itself* a discretionary one. True—but as I discussed at the outset, it is not as discretion-

ary (*i. e.,* is not subject to as broad a *scope* of discretion) as the term "reopening" might suggest. Surely it would be unlawful to deny reopening ("remand" would be a better word) when the decision of the Attorney General substitutes for the alien's designated country of deportation a country that was not an "alternate" specified by the IJ, so that the alien was not entitled to challenge it at the hearing at all. It is also, in my view, an "abuse of discretion," if not indeed positively contrary to law, to deny "reopening" when the Attorney General's decision substitutes a country that *was* an alternate, at least where, as here, (1) the alien had assurance that the country of primary destination would accept him, and (2) there was no clear indication in the INS' rules or practice that a country not objected to as an alternate could not later be objected to as the primary designation. That this is beyond the permissible foreclosure of mandatory relief such as withholding is suggested by the negative implication of the INS' own regulation entitled "Reopening or reconsideration," which reads in part:

> "[N]or shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of *discretionary* relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing." 8 CFR § 3.2 (1987) (emphasis added).

The denial of reopening here takes on a particularly capricious coloration when one compares it with the considerable indulgence accorded to the INS' procedural defaults in the same proceeding—and when one recognizes that it was precisely that indulgence which placed Doherty in the position of being unable to present his withholding claim. During the deportation hearing, the IJ rejected the INS' request to

change Doherty's designated country of deportation, concluding that the INS had failed to come forward with any evidence supporting its contention that deporting Doherty to Ireland would be prejudicial to the interests of the United States. On appeal, the BIA affirmed this action, and rejected the INS' motion to reopen (remand) for production of such evidence, since it had been previously available. Although Attorney General Meese did not formally review the BIA's denial of this motion, he effectively reversed it by receiving the proffered evidence into the record on appeal. Had the INS not procedurally defaulted during the deportation proceedings, and had the evidence it introduced been successful in securing *at that level* a rejection of his designated country, Doherty would clearly have been entitled to apply then for withholding. What the INS is here arguing, then, is that because it prevailed on appeal (after the forgiving of its procedural default), rather than before the IJ (with the observance of proper procedures), Doherty may be denied an opportunity to apply for withholding. The term "arbitrary" does not have a very precise content, but it is precise enough to cover this.

## IV

The INS asserts that, even if the Attorney General erred in denying reopening on the basis of Doherty's alleged procedural defaults, the decision must nonetheless be upheld on the ground that the Attorney General properly concluded that Doherty was statutorily ineligible for withholding of deportation. In reaching this conclusion, the Attorney General assumed *arguendo* (as do I) that Doherty had established a prima facie case of eligibility for withholding of deportation under §243(h)(1). His finding of statutory ineligibility was based solely on the determination that there were "serious reasons for considering that [Doherty] has committed a serious nonpolitical crime," 8 U.S.C. §1253(h)(2)(C), and that Doherty had himself "assisted, or

otherwise participated" in persecution "on account of . . . political opinion," § 1253(h)(2)(A).[6]

The Court of Appeals held that the Attorney General erred in refusing to reopen on this basis because, in its view, the Attorney General may never make such determinations without a hearing. 908 F. 2d, at 1116–1117. It based this conclusion on *Abudu*'s statement that the BIA's authority to decide a reopening motion by " 'leap[ing] ahead' " to the substantive determination that the movant would in any event " 'not be entitled to the discretionary grant of relief' " does *not* apply to the relief of withholding of deportation. 908 F. 2d, at 1117 (quoting 485 U. S., at 105). As my earlier discussion makes clear, however, the "leap over" substantive determination at issue in *Abudu* was the determination that the Attorney General would not exercise his discretion in favor of granting asylum. See *supra*, at 332–333. Our statement that that sort of "leap over" determination could not be made for withholding was simply a recognition of the fact that the Attorney General *has* no discretion as to that relief. Nothing in *Abudu* suggests, however, that reopening may not be denied with respect to withholding on the basis of a determination, clearly supported by the existing record, that the alien is statutorily ineligible for relief. There is no reason in principle why such a determination cannot be made (indeed, the prima facie case inquiry is simply an example of such a determination), and the Court of Appeals' statement to the contrary seems to me wrong.

---

[6] Section 243(h)(2) provides in relevant part that the mandatory obligation to withhold deportation does not apply to an alien if the Attorney General determines:

"(A) [T]he alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion; [or]

. . . . .

"(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States . . . ." 8 U. S. C. §§ 1253(h)(2)(A), (C).

The Court of Appeals also concluded that an evidentiary hearing is always necessary for withholding claims because the types of issues they present—for example, whether an alien's serious crimes were "political"—"raise formidable questions of fact that cannot be adequately resolved in the absence of an evidentiary record." 908 F. 2d, at 1117. That is usually true, but surely not *always;* as in the ordinary civil context, there will be cases in which the paper record presented in connection with a claim, see Fed. Rule Civ. Proc. 56, or the record of an earlier hearing, will establish uncontroverted facts showing that the claim fails as a matter of law. Indeed, we recognized in *Abudu* that an evidentiary hearing may be denied if an alien requesting reopening fails to make a prima facie case for the relief sought, 485 U. S., at 104, despite the fact-intensive nature of the questions involved.

Concluding that the Court of Appeals erred in applying a *per se* rule that withholding claims cannot be resolved without an evidentiary hearing, I would vacate that portion of its judgment which orders a hearing. Before such an order can be entered, the court must consider whether the record before the Attorney General was sufficiently developed that, taken together with matters that are properly subject to notice, it provided the requisite degree of support for the conclusion that the serious crimes Doherty has admitted committing were "nonpolitical." I would remand the case to the Court of Appeals for consideration under that standard.