

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-1-2008

# Umoeka v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Umoeka v. Atty Gen USA" (2008). *2008 Decisions.* Paper 427.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/427

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1866
_____

UTIBE N. UMOEKA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A97-526-690)

Immigration Judge: Mirlande Tadal

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2008

Before: SLOVITER, FUENTES, and ALDISERT, <u>Circuit Judges</u>.

(Opinion Filed: October 1, 2008)

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

Petitioner Utibe N. Umoeka, a Nigerian citizen, entered the United States on March 25, 2006, without being inspected or paroled by an immigration officer. On March 31, 2006, Umoeka was served with a Notice to Appear, which charged him with being subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). With the assistance of counsel, Umoeka conceded removability, and subsequently applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT") based on his status as a "perceived police informant." Following a hearing, the immigration judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed. Umoeka did not petition us for review of that decision. Umoeka subsequently filed a motion with the BIA to reopen his immigration proceedings, offering evidence that he alleged was not available during the original hearing before the IJ. The BIA denied that motion, and Umoeka filed a timely petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252, and we will deny the petition for the reasons that follow.

## I.

Because we write exclusively for the parties, we only discuss the facts and proceedings to the extent necessary for the resolution of this case.

In his petition, Umoeka alleges that he left Nigeria out of fear of the Niger Delta People's Volunteer Force ("NDPVF"), an extremely violent organization that seeks

2

control of the natural resources of the Niger Delta area. Accordingly to Umoeka, the NDPVF is very powerful, influential, and has the backing of the ruling party. Umoeka's reason for fearing the NDPVF relates to his relationship with Felix Akpan, Umoeka's friend and roommate. In May 2005, Umoeka learned that Akpan was supplying the local police with information about the NDPVF. On October 7, 2005, Akpan was shot to death. Although Umoeka did not witness the killing, he was told that it was committed by the NDPVF. Two days later, Umoeka's house was ransacked and his other roommate, Edidiong, was assaulted. Again, Umoeka did not witness the attack, but was told that the NDPVF was responsible. Umoeka presumed that both attacks – against Akpan and against Umoeka's home – were related to Akpan's work as an informant. Further, Umoeka believed that, because of his relationship with Akpan, the NDPVF assumed that he too was an informant, thus placing his life in grave jeopardy. Umoeka fled to Lagos, where he remained in hiding for six months, and then left for the United States.

The IJ denied Umoeka's application, holding that Umoeka had failed to present corroborating evidence from anyone with first-hand knowledge of his allegations, or evidence that the government was acquiescing, accepting, or cooperating in the alleged actions of the NDPVF. In addition, the IJ held that Umoeka failed to show that he was persecuted on the basis of a protected ground. The BIA affirmed the IJ's holding, noting that Umoeka's reliance on hearsay was insufficient to support his claims, but declined to consider whether Umoeka had been persecuted on the basis of a protected ground.

3

Umoeka did not petition for review of the BIA's order.

On January 8, 2007, Umoeka filed a timely motion to reopen, and presented evidence that he claimed was unavailable during his previous hearing and appeal. This evidence – consisting of affidavits, official death certificates, and a newspaper article – verified the existence and death of Akpan, the attack on Edidiong, and Umoeka's whereabouts during his time in Lagos. The BIA, however, rejected the motion to reopen, holding that the new evidence was insufficient to demonstrate prima facie eligibility for asylum, withholding of removal, or protection under CAT.

## II.

The scope of our review of the BIA's order denying Umoeka's motion to reopen is quite limited. See I.N.S. v. Doherty, 502 U.S. 314, 323 (1992). Where, as here, the BIA denies a motion to reopen because the petitioner fails to make a prima facie case for the underlying substantive relief sought, this Court reviews the BIA's findings of fact for substantial evidence, and the ultimate decision to reject the motion to reopen for an abuse of discretion. Sevoian v. Ashcroft, 290 F.3d 166, 170 (3d Cir. 2002). This standard of review grants broad deference to the decisions of the BIA, Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003), because under the regulations, the BIA "has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a); see Sevoian, 290 F.3d at 173 ("No statute or regulation creates any circumstance in which a motion to reopen must be granted. This implies that

4

motions to reopen remain discretionary motions which the Board or Immigration Judge has 'broad discretion' to grant or deny." (internal quotation marks and citations omitted)). Thus, we should reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Fadiga v. Att'y Gen. U.S., 488 F.3d 142, 153 (3d Cir. 2007).[1]

## III.

On February 21, 2007, the BIA denied Umoeka's motion to reopen his immigration proceedings. The BIA held that the new evidence submitted by Umoeka failed to make out a prima facie case that he would be singled out for persecution on account of a protected ground.[2] Specifically, the BIA stated that Umoeka had failed to establish that "perceived police informants" constitutes a "particular social group" – and thus a protected ground – under the Immigration and Naturalization Act ("INA").

In his petition to reopen, Umoeka argues that we should reject the BIA's legal conclusion and construe the phrase "particular social group" more broadly, so as to include "perceived police informants." Our role in interpreting this language, however, is quite limited. Fatin v. I.N.S., 12 F.3d 1233, 1239 (3d Cir. 1993). Because the phrase

---

[1]In addition, motions to reopen are generally disfavored because they affect the finality of a court's decision, and because "'every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" Xu Yong Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) (quoting Doherty, 502 U.S. at 323).

[2]The BIA also held that Umoeka had failed to meet his burden under CAT of demonstrating that he "would more likely than not be tortured by or with the acquiescence of the Nigerian government." Umoeka, however, has not challenged that aspect of the BIA's decision – Umoeka seeks our review of the BIA's decision only in regard to his asylum and withholding of removal claims.

5

"particular social group" is not defined in the INA, we give the BIA deference in construing the statutory language – the only question we consider is whether the BIA abused its discretion by basing its interpretation on an impermissible construction of the statute. See id.

Here, we conclude that the BIA reasonably construed the statute. As authority for its denial of Umoeka's motion, the BIA cited its decision in Matter of C- A-, 23 I & N Dec. 951 (B.I.A. 2006), aff'd sub nom, Castillo-Arias v. Att'y Gen. U.S., 446 F.3d 1190 (11th Cir. 2006). In Matter of C- A-, the BIA held that "noncriminal drug informants working against the Cali drug cartel" in Columbia did not constitute a particular social group within the meaning of the INA. Id. at 961. In particular, the Matter of C- A- decision noted that several qualities of noncriminal drug informants cut against classifying such informants as a particular social group: the voluntary nature of an informant's decision to act as an informant; the lack of social visibility of informants as a group; and the indication that the Cali Cartel retaliates against anyone – not just informants – who work against their interests. Id. Applying this precedent to Umoeka's case, the BIA determined that "perceived police informants" do not constitute a particular social group, putting particular emphasis on the evidence in the record showing that the NDPVF – like the Cali cartel in Matter of C- A- – directs harm against anyone, as opposed to any particular social group, who is perceived to interfere with its interests. In emphasizing this consideration, the BIA concluded, as in Matter of C- A-, that those at risk from the NDPVF because of a possible association with a police

6

informant were not differentiable from any other member of the general populace who might oppose the NDPVF's actions. Without such differentiation, there can be no "particular social group" to speak of. Therefore, although the respective groups of police informants and perceived police informants are not identical, we cannot say that the BIA's decision to treat these two groups in an analogous manner was an impermissible construction of the statute, and thus an abuse of discretion.

Furthermore, the BIA also held that Umoeka failed to make out a prima facie case in that he failed to establish that he would be persecuted (or had a well-founded fear of persecution) based on his identity as an associate of Akban. See Fatin, 12 F.3d at 1240 (noting that a prima facie case for asylum requires petitioner to "show that he or she would be persecuted or has a well-founded fear of persecution" based on membership of a protected group). As noted by the BIA, Umoeka acknowledged that he didn't know if the NDPVF would find him or harm him should he be returned to Nigeria. Rather, Umoeka expressed his concern that he "might . . . be seen and identified" if he were returned to Nigeria. Umoeka's equivocation about the threat offered by the NDPVF, viewed in light of the fact that Umoeka was able to live in Lagos unmolested for six months prior to leaving for the United States, led the BIA to determine that Umoeka had not made the requisite showing that he would be persecuted, or had a well-founded fear of persecution, should he be returned to Nigeria. As this finding is supported by substantial evidence in the record, we uphold the BIA's determination that Umoeka

failed to satisfy his prima facie case.[3]

For the foregoing reasons, we deny Umoeka's appeal and affirm the decision of the BIA.

---

[3]The eligibility threshold for withholding of removal is higher than that required of asylum. Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004) (quoting Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998)). Accordingly, because Umoeka fails to qualify for asylum, he also fails to qualify for withholding of removal. See id.