[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14281
Non-Argument Calendar

_____

Agency No. A079-433-612

YU ZHONG CHEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 26, 2013)

Before CARNES, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Yu Zhong Chen, a Chinese national who attempted to enter the United States

without valid entry documents, petitions for review of the Board of Immigration

Appeals' decision denying his motion to reopen his removal proceedings.  After the initiation of removal proceedings in 2002, Chen filed an application for asylum and withholding of removal, claiming that he was arrested, interrogated, and beaten after Chinese officials broke up a small Christian prayer group at his home in Fuzhou City, Fujian Province; and that China's one-child family planning policy prevented him and his wife from having a second child.  Relying on inconsistencies and omissions in his various statements to immigration officials, an immigration judge found that Chen was not credible, denied his application for relief, and ordered his removal to China.  The BIA affirmed that decision in June 2004 without written opinion.

Over seven years later, in January 2012, Chen moved to reopen his removal proceedings on the ground that conditions in China had worsened for members of unsanctioned Christian groups and opponents of the one-child policy.  The BIA denied the motion as untimely under the 90-day deadline for filing motions to reopen, concluding that Chen failed to overcome the limitation period by demonstrating a material change in conditions in either his hometown of Fuzhou City or in China as a whole.  The BIA also found that Chen did not establish a prima facie case for asylum, withholding of removal, or relief under the United Nations Convention Against Torture (CAT) because he did not present evidence

2

that the Chinese government was aware of his current religious practices and would specifically target him for persecution upon his return.

We review the denial of a motion to reopen removal proceedings for an abuse of discretion, and our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner.  Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009).  Because motions to reopen are especially disfavored in removal proceedings, where every delay generally "works to the advantage of the deportable alien who wishes merely to remain in the United States," INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724 (1992)," the moving party "bears a heavy burden," Zhang, 572 F.3d at 1319.

A motion to reopen removal proceedings must be filed within 90 days of the date of the final administrative order of removal.  8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).  The 90-day deadline, however, is inapplicable where an alien demonstrates "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material" and could not have been produced at the removal proceeding.  8 U.S.C. § 1229a(c)(7)(C)(ii); see also 8 C.F.R. 1003.2(c)(3)(ii).

Chen contends that the BIA abused its discretion in denying his motion to reopen as untimely because the news articles and other materials he submitted in support of that motion showed an overall deterioration in conditions in China for

3

Christians and opponents of the one-child policy, even if they do not specifically reference his hometown. Chen also maintains that the BIA failed to evaluate whether the new evidence warranted reopening and demonstrated his eligibility for asylum, withholding of removal, and CAT relief. We disagree with both contentions.

In support of his motion to reopen, Chen submitted statements, reports, and media accounts from 2008 through 2011, which indicated that China enforces its one-child policy through fines, forced sterilization, and forced abortions, and that members of unauthorized Christian groups are subject to repression and mistreatment. Chen specifically draws our attention to three news articles he submitted to the BIA: (1) a 2008 article that reported an "overall increase in reported persecutions" of Christians between 2006 and 2007, but also noted that Chinese officials had narrowed their focus to target church leaders "rather than cracking down on ordinary believers"; (2) a 2011 article stating that a Chinese family planning official was accused of killing a man while attempting to apprehend his sister in order to have her forcibly sterilized; and (3) another 2011 article that recounted the arrests of dozens of Christians who gathered to celebrate mass and generally noted an "intense crackdown of Tibetan monks, human-rights activities, and others in recent weeks."

4

The materials submitted by Chen, including the three news articles he specifically relies on, do not demonstrate a significant change in the Chinese government's enforcement of its one-child policy or its treatment of members of unauthorized Christian groups since he filed his asylum application in 2002. The State Department's 2002 Country Report on Human Rights Practices in China, which was submitted in connection with Chen's original removal proceedings, noted that the government strictly enforced its one-child policy in cities through coercive means, including fines and instances of forced abortions and forced sterilization. The 2002 report also noted that overall respect for freedom of religious belief in China remained poor, that the Chinese government cracked down on unsanctioned religious groups, including Christians, and that church leaders and adherents were subject to harassment, interrogation, detention, and even physical abuse. The reports of specific instances of abuse and isolated upticks in mistreatment in the past several years do not clearly indicate that present conditions in China are generally worse for Christians or opponents of the one-child policy than those described in the 2002 Country Report. At most, they document an unfortunate continuation of intolerance, harassment, and abuse on the part of the Chinese government. Chen has not conducted a meaningful comparison between conditions in 2002 and the present to support his assertion that overall

5

conditions in China have worsened for Christians and those who oppose the one-child policy, nor has he submitted sufficient evidence to compel such a conclusion.

The record also does not support Chen's contention that the BIA failed to evaluate whether the materials he submitted warranted reopening of his removal proceedings and eligibility for relief. The BIA expressly considered the evidence Chen submitted and found that it did not establish either a material change in country conditions or eligibility for relief from removal. Because the BIA did not abuse its discretion in denying Chen's untimely motion to reopen his removal proceedings, we deny his petition for review.

**PETITION DENIED.**

6