24 F.3d 248
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Olga PANIAGUA-MENDIETA, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70716.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 15, 1994.
Decided May 6, 1994.
 
 Before: CHOY, REINHARDT and LEAVY, Circuit Judges:
 
 
 1
 MEMORANDUM*
 
 
 2
 Olga Paniagua-Mendieta (Paniagua), a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals denying her motion to reopen. We grant the petition and remand to the Board.
 
 
 3
 Olga Paniagua-Mendieta is a 43 year-old native of Mexico. Since a childhood bout with rheumatic fever, she has suffered from a heart condition which has gotten progressively worse. In 1975, Paniagua's mother, who lives in San Francisco and is now a United States citizen, decided that she "had to bring her from Mexico because she's always suffered from illnesses." (AR 258). Paniagua's mother made arrangements for her to obtain a counterfeit green card, and Paniagua entered the United States illegally using that green card. Since her entry in 1975, Paniagua has lived with her family--including a daughter who is a United States citizen and a son who is a lawful permanent resident--in San Francisco. She worked as a bartender until 1986, when her long-festering heart condition finally left her unable to work.[1]
 
 
 4
 As we explained in a memorandum disposition addressing an earlier phase of this case, Paniagua's troubles with the law arose out of a "disfunctional relationship" which she had with Jorge Arrospide from about 1979 to 1983. By manipulating her affections and threatening to report her to the INS, Arrospide enlisted Paniagua in several fraudulent schemes. As a result of these schemes, Paniagua agreed in 1984 to repay the City and County of San Francisco $10,683 in General assistance that she had not been eligible to receive, and she pleaded guilty in 1985 to aiding and abetting one of Arrospide's false claims against the United States. She was sentenced to a fine, restitution, and probation.
 
 
 5
 After she was convicted, Paniagua received an order to show cause why she should not be deported. She admitted that he illegal entry rendered her deportable, but she applied for suspension of deportation or, in the alternative, voluntary departure. The Immigration Judge denied her applications on April 16, 1986, and the Board of Immigration Appeals affirmed on November 6, 1990. In our earlier memorandum disposition, filed on August 17, 1992, we affirmed the BIA. See Paniagua-Mendieta v. I.N.S., No. 91-70110 (9th Cir. Aug. 17, 1992). We held that, given the evidence before the IJ at the deportation hearing, the BIA did not abuse its discretion in finding that Paniagua failed to satisfy the statutory requirement of "good moral character." (AR 9-10).
 
 
 6
 However, we noted that "[s]ince the 1986 deportation hearing, several things have changed that could bear on Paniagua's eligibility for suspension of deportation or voluntary departure." (AR 10). We listed five new facts: (1) Paniagua gave birth to an American citizen daughter in 1988; (2) Paniagua's son had become a lawful permanent resident of the United States; (3) Paniagua's heart condition had worsened, so that her cardiologist now said that she was "totally disabled" and that the stress of deportation "would worsen her symptoms and put her life in danger"; (4) Paniagua had continued her regular restitution payments to the City and County; and (5) Paniagua had successfully completed probation, and her probation officer stated that "[i]t is believed that the offense was due to unusual circumstances and that she will not again be seen before the Court." (AR 10-11).
 
 
 7
 We concluded that these facts constituted "significant changes in circumstances" which "appear[ed] relevant both to Paniagua's moral character in the preceding seven years and to her claim of extreme hardship." (emphasis added). We stated that the new evidence "should be considered in an appropriate forum." (AR 11). Because the new facts were not in the record on review, we noted that it would have been improper for us to consider these facts directly or order a remand to consider them. Rather, we held that the changed circumstances should be considered by the BIA on a motion to reopen. Accordingly, we affirmed the BIA's earlier denial of relief, but stayed our mandate pending the decision on the motion to reopen.
 
 
 8
 On October 5, 1992, the BIA denied Paniagua's motion to reopen. Addressing the same new facts discussed in our previous memorandum, the BIA concluded that "[a]lthough the evidence offered by the respondent is new, it does not establish prima facie eligibility for suspension of deportation, because the new evidence does not address the respondent's lack of good moral character." (AR 3) (emphasis added). We hold that the BIA abused its discretion in concluding that the new evidence did not relate to Paniagua's moral character and in denying the motion to reopen on that ground.[2]
 
 
 9
 At least two of the new facts offered by Paniagua clearly relate to her good moral character: her continued regular payment of restitution to the City and County, and her successful completion of probation and the favorable recommendation of her probation officer. These facts provide substantial new information about Paniagua's character, information which was not available to the BIA at the time it originally refused to suspend deportation. Because the Board based its refusal to reopen on its manifestly erroneous assertion that the new information "does not address the respondent's lack of good moral character," it abused its discretion. See Reyes v. I.N.S., 673 F.2d 1087, 1089 (9th Cir.1982) ("When the Board distorts or disregards important aspects of the alien's claim, denial of the alien's motion to reopen is arbitrary and the Board has abused its discretion.").
 
 
 10
 Because the Paniagua has presented new evidence which is clearly relevant to her moral character, we grant the petition and remand to the Board. The Board should reconsider its decision not to reopen in light of our earlier decision, this present decision, and the fact that Paniagua has submitted new material information which addresses the issue of her moral character.
 
 
 11
 PETITION GRANTED. REMANDED.
 
 CHOY, Circuit Judge, dissenting:
 
 12
 I am constrained to dissent from my colleagues' disposition granting Paniagua's petition for review of the BIA's order denying Paniagua's motion to reopen.
 
 
 13
 In view of the Attorney General's "broad discretion" to grant or deny a motion to reopen, INS v. Doherty, 112 S.Ct. 719, 724 (1992), I find no ground on which to disturb the BIA's conclusion that the "new evidence" did not address Paniagua's moral character, good or bad. Her continued regular payment of restitution to the City and County of San Francisco for welfare fraud is not new evidence. She had been paying such restitution when her previous appeal was heard before this court. See Paniagua-Mendieta v. INS, No. 91-70110 (9th Cir. Aug. 17, 1992). There the claim was also before us that the BIA had disregarded this factor in denying her application for suspension of deportation or voluntary departure. However, having found that "the record reflects that the BIA considered all relevant evidence," AR 9, we rejected this claim. I find no abuse of discretion in the BIA's failure explicitly to revisit essentially similar evidence in its order denying her motion to reopen.
 
 
 14
 This conclusion is unaltered by our tentative statement in that case that the allegedly new facts "appear relevant both to Paniagua's moral character in the preceding seven years and to her claim of extreme hardship." AR 11 (emphasis added). Contrary to the majority's conclusion that this statement constrained the BIA to view these facts as "new evidence", other portions of the disposition underscore that our comment was merely a tentative suggestion that the evidence "could bear on Paniagua's eligibility for suspension of deportation or voluntary departure." AR 10 (emphasis added). On closer inspection, the BIA was free to conclude, as it apparently and correctly did, that this evidence bore only on one of the conjunctive criteria for suspension and therefore did not establish Paniagua's prima facie eligibility for such relief.
 
 
 15
 Paniagua's successful completion of probation and the favorable comment of her probation officer carry only a neutral effect. Her having refrained from further wrongdoing under the watchful eye of a probation officer is hardly affirmative evidence of good moral character.
 
 
 16
 I would affirm the BIA's denial of the motion to reopen.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Paniagua's cardiologist wrote in December of 1990 that the condition had left her "totally disabled" and "unable to fully care for her small child." The following April the cardiologist wrote that "[t]he stress of deportation without access to proper medical attention would worsen her symptoms and put her life in danger." These statements by the cardiologist are among the new evidence Paniagua seeks to have considered in her motion to reopen
 
 
 [2]
 See I.N.S. v. Doherty, 112 S.Ct. 719, 725 (1992) (holding that denials of motions to reopen are reviewed for abuse of discretion)