67 F.3d 305
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frehd AHMAD, aka: Farhad Ahmad, Petitioner-Appellant,
v.
Richard K. ROGERS, District Director, (Acting), Immigration
and Naturalization Service, Respondent-Appellee.
 No. 94-55803.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1995.
Decided Sept. 27, 1995.
 
 1
 Before: BROWNING, PREGERSON, Circuit Judges, and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 In his habeas corpus petition, Frehd Ahmad, a native of Afghanistan, challenges the Board of Immigration Appeals's denial of his motion to reopen his exclusion hearings. Ahmad contends that the Immigration Judge conducted an improper in absentia hearing after Ahmad did not appear on time for his scheduled hearing. The BIA affirmed the Immigration Judge's denial of his motion to reopen, and the district court dismissed his habeas corpus petition. We have jurisdiction under 8 U.S.C. Sec. 1291, and we reverse.
 
 FACTS
 
 4
 Ahmad was born in Afghanistan. His asylum application describes the brutal life he endured under Soviet occupation. [E.R. 24-27]. His father was a mujahadin commander who was killed in battle. His eldest brother also died in fighting. His mother, sister, a newborn baby and eight other family members and friends died when their home was bombed.
 
 
 5
 In January 1986, Soviet soldiers arrested Ahmad and his brother and charged them with anti-government leafletting. Over the next six months, Soviet soldiers interrogated and tortured Ahmad. Ahmad was threatened, beaten, subjected to electrical shock, cut with knives, deprived of sleep and victimized in a variety of other gruesome ways. After six months, Ahmad was sentenced to fifteen years at the infamous Pulecharkhi prison. The conditions there were similarly miserable.
 
 
 6
 When the Soviet forces withdrew from Afghanistan two and a half years later, Ahmad was released. Fearing political persecution, Ahmad escaped to Pakistan where a relative arranged for him to travel to America.
 
 
 7
 Ahmad arrived in New York City via France on April 16, 1992, where the Immigration and Naturalization Service ("INS") detained him as an excludable alien without a valid immigrant passport or visa. Ahmad appeared several times for a hearing in New York that was repeatedly rescheduled. On September 16, 1992, Ahmad applied for a change of venue to Los Angeles, California, stating that he intended to apply for asylum and withholding of deportation. His request was approved, and he received a notice that a hearing was scheduled for him in Los Angeles on November 17, 1992 at 8:30 a.m.
 
 
 8
 The facts surrounding the November 17 hearing are in dispute. Ahmad contends that he appeared in court that day but arrived half an hour late at 9:00 a.m. He explains that the traffic on the approximately 30 mile drive from his residence in Canoga Park to downtown Los Angeles at rush hour was unusually heavy, that he had only been in Los Angeles for a short time, and that he was relying on his friend, who drove him, to know how long the trip would take.
 
 
 9
 The Immigration Judge ("IJ"), on the other hand, after reviewing the record and tape recording of the proceeding, maintains that the court had the clerk call out Ahmad's name "in the courtroom, waiting area and hallways" at 9:30 a.m., and that Ahmad did not respond. [E.R. at 33]. The government does not contest that Ahmad appeared in court later that day.
 
 
 10
 Around 9:30 a.m. on the morning of November 17, the IJ conducted an in absentia exclusion hearing and ordered Ahmad excluded. Ahmad then filed an application for asylum and a motion to reopen his exclusion proceedings. On April 30, 1993, the IJ denied Ahmad's motion to reopen, holding that there was not "good cause" to do so. [E.R. 33]. On appeal, the Board of Immigration Appeals ("BIA") affirmed, finding that Ahmad had failed to show "reasonable cause" for his absence. [E.R. 96].
 
 
 11
 Ahmad then filed the instant habeas corpus action in the United States District Court for the Central District of California. A magistrate filed a Final Report and Recommendation suggesting the district court affirm the BIA's decision. [E.R. 107]. The district court affirmed the BIA. Ahmad now appeals.
 
 ANALYSIS
 
 12
 A. Standard of Review.
 
 
 13
 A district court's dismissal of a habeas petition is reviewed de novo. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988). The BIA's denial of an applicant's motion to reopen is reviewed for an abuse of discretion. INS v. Doherty, 112 S.Ct. 719, 725 (1992). However, when agency determinations turn on questions of law, they are reviewed de novo. Desir, 840 F.2d at 726.
 
 
 14
 B. The In Absentia Exclusion Hearing.
 
 
 15
 When the IJ conducted Ahmad's in absentia exclusion proceeding on November 17, 1992, there was no statutory nor regulatory provision that authorized in absentia exclusion proceedings.[1] There was only authorization for in absentia deportation proceedings in Sec. 252 of the Immigration and Naturalization Act of 1952 ("Act" or "INA"):
 
 
 16
 If any alien has been given a reasonable opportunity to be present at a [deportation] proceeding ... and without reasonable cause fails or refuses to attend ... the special inquiry officer may proceed in like manner as if the alien were present.
 
 
 17
 8 U.S.C. Sec. 1252(b). The BIA has held that an IJ may also conduct an exclusion proceeding in absentia. Matter of Nafi, 19 I & N Dec. 430, 431 (BIA 1987); see also Matter of Haim, 19 I & N Dec. 641 (BIA 1988). Neither the Ninth Circuit, nor any other circuit, has addressed this issue.
 
 
 18
 We need not reach this question, however, because even assuming that in absentia exclusion hearings were proper in 1992 as a general matter, we find that Ahmad showed "reasonable cause," for not appearing on time to his hearing and therefore that the in absentia hearing was improper.
 
 
 19
 The BIA found that Ahmad failed to show "reasonable cause" for not appearing at his hearing on time and thus denied his motion to reopen.[2] This finding was erroneous. Ahmad did demonstrate "reasonable cause." The traffic on the approximately 30 mile drive from his residence in Canoga Park to downtown Los Angeles at rush hour was unusually heavy, he did not have an attorney to advise him, he was relying on the friend who drove him to know how long the drive would take, and he had only been in Los Angeles for a short time and thus could not have appreciated the potential traffic conditions.[3]
 
 
 20
 Ahmad did not "simply refus[e] to appear for hearings." Nafi, 19 I & N at 431. He appeared for hearings in New York on three separate occasions. He showed up in court on May 14, 1993 to testify in his brother's asylum hearing. He arrived, but late, for his own hearing. Aliens who have shown good faith efforts to attend their hearings should be allowed to present the merits of their cases. Ahmad made a good faith effort to be on time, but for understandable reasons was not.
 
 CONCLUSION
 
 21
 Ahmad showed "reasonable cause" for being late to his hearing. The BIA abused its discretion by not granting his motion to reopen. We reverse and remand for proceedings consistent with the views herein and above expressed.
 
 
 
 *
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Since then, the INS has enacted a regulation providing for in absentia exclusion proceedings. See 8 C.F.R. Sec. 3.26 (1995)
 
 
 [2]
 The BIA found that the declaration Ahmad submitted in support of his motion to reopen, a statement by the friend who drove him to the courthouse, was false. This finding is irrelevant to our decision, however, because whether Ahmad arrived at 9:00, as his friend alleged, or at 9:30, or at 9:40, he still showed "reasonable cause" for his tardiness
 
 
 [3]
 At oral argument, the government admitted that the difficult traffic conditions in Los Angeles were notorious