

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2005

# Danu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1657

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Danu v. Atty Gen USA" (2005). *2005 Decisions*. Paper 1579.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1579

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 03-1657 and 03-4255

_____

FLOAREA DANU,

Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States;
TOM RIDGE, Secretary of Department of Homeland Security,

Respondents

_____

On Petition for Review of the
Orders of the Board of Immigration Appeals
(Board No. A29-109-144)

_____

Argued December 7, 2004

Before:  Before:  RENDELL and FISHER, *Circuit Judges*, and YOHN,[*] *District Judge*.

(Filed: January 6, 2005 )

Robert A. Perkins (Argued)
Robert A. Perkins & Associates
161 West Harrison, Suite 102
Chicago, IL  60605

_____

[*]The Honorable William H. Yohn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Joseph C. Hohenstein (Argued)
Nationalities Service Center
1300 Spruce Street
Philadelphia, PA 19107
     *Attorneys for Petitioner*

James A. Hunolt (Argued)
Douglas E. Ginsburg
John D. Williams
Jocelyn L. Wright
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
     *Attorneys for Respondents*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Floarea Danu ("Danu") petitioned this Court for review of two decisions of the

Board of Immigration Appeals ("BIA"). Danu seeks review of the February 28, 2003

denial of her Motion to Reopen the BIA's August 2, 2001 decision (in which she was

denied asylum and granted voluntary departure) based on counsel's failure to apprise her

of the availability of suspension of deportation pursuant to the Nicaraguan Adjustment

and Central American Relief Act of 1997 ("NACARA").[1] She also seeks review of the

October 3, 2003 grant of her Motion to Reconsider the BIA's February 28, 2003 decision,

_____

[1]Pub. L. No. 105-100, 111 Stat. 2193, 2196 amended by Pub. L. No. 105-139, 111
Stat. 2644.

2

where the BIA recognized that exceptional circumstances existed to warrant reopening the case to permit voluntary departure and reinstated its August 2, 2001 decision denying asylum and granting voluntary departure to that end but denied Danu's request to pursue NACARA suspension of deportation. For the reasons that follow, we will grant the petitions for review.

## I.

Because we write only for the parties, we set forth only those facts and contentions as are necessary to our discussion.

Danu, a native and citizen of Romania, entered the United States as a non-immigrant visitor on May 30, 1990. On June 10, 1990, she applied for asylum on grounds that she would be persecuted by the Romanian government for practicing her Pentecostal religion. Danu remained in the United States beyond that authorized by her visa and the Immigration and Naturalization Service ("INS") issued an order to show cause on March 22, 1995, charging Danu as a deportable alien. The Immigration Judge ("IJ") denied Danu's asylum claim but granted her voluntary departure. Danu's counsel timely appealed that decision. Prior to a decision by the BIA, Danu married a United States citizen and sought remand of the case for consideration of her application for adjustment of status. Between 1998 and 2000, various hearings were conducted on Danu's application for adjustment of status. Danu ultimately withdrew her claim for adjustment

3

of status due to her divorce. Her case was remanded to the BIA for consideration of her appeal of the denial of asylum. New counsel represented her in this endeavor.

On August 2, 2001, the BIA dismissed Danu's appeal from the denial of asylum and granting of voluntary departure. The decision was mailed to Danu's counsel of record (who was not the counsel then-representing her in the BIA appeal). Danu did not learn of the decision until December 18, 2001, when she was picked up and detained by the INS. She retained new counsel, who on January 4, 2002, filed with the BIA a Motion to Reopen the August 2, 2001 decision seeking relief under NACARA. She asserted in that motion that she was *prima facie* eligible for NACARA suspension of deportation given its application to Romanians who entered the United States prior to December 31, 1990, and who claimed asylum before December 31, 1991. She further claimed that at no time prior to December 29, 2001, did she learn of her right to make a claim for suspension of deportation pursuant to NACARA. She claimed ineffective assistance of her prior counsel for their collective failures to advise her of the availability of NACARA relief.

On February 28, 2003, the BIA denied Danu's Motion to Reopen for relief under NACARA. The BIA determined that although Danu appeared to be *prima facie* eligible for suspension of deportation under NACARA, the motion to reopen was untimely as it was filed more than 90 days after the date of the final deportation order of August 2, 2001. 8 C.F.R. § 1003.2(c)(2). The BIA further found that Danu failed to perfect her

4

claim for ineffective assistance of counsel under *Matter of Lozada,* 19 I & N Dec. 637 (BIA 1988), for her counsel's alleged failure to inform her of her right to relief under NACARA. Danu had not filed, as *Lozada* requires, an affidavit attesting to the relevant facts, did not notify the ineffective attorneys of her claims and permit them an opportunity to respond, and did not state whether a complaint had been filed with disciplinary authorities or, if not, why not.

Danu filed a Motion to Reconsider the Motion to Reopen, requesting therein that the BIA reconsider its prior decision of February 28, 2003, due to the ineffective assistance of Danu's prior counsel in failing to inform her of her eligibility for NACARA suspension of deportation and failure to inform her of the BIA's decision denying her asylum and granting voluntary departure. She also claimed that her counsel who filed the January 4, 2002 Motion to Reopen had been ineffective for his failure to comply with the requirements of *Lozada* in filing that motion.

On October 3, 2003, the BIA issued a decision granting Danu's Motion to Reconsider the February 28, 2003 decision and reissuing its August 2, 2001 decision that denied Danu asylum but granted her voluntary departure. The BIA determined that Danu supported her claim for ineffective assistance of counsel regarding her failure to timely file a claim for NACARA relief with evidence that she complied with the requirements of *Lozada*. The BIA also recognized that Danu had not voluntarily departed after the August 2, 2001 final order of deportation issued because counsel representing Danu upon

5

the return of her case to the BIA had not filed an appearance and consequently had not received notice of the decision. Danu in turn was deprived of notice and of the opportunity to depart voluntarily. Consequently, the BIA reissued the August 2, 2001 decision to permit Danu voluntary departure. Despite its findings that lack of notice of the August 2, 2001 decision warranted voluntary departure, the BIA declined to permit Danu to pursue NACARA suspension of deportation.

## II.

We review the BIA's denial of a motion to reopen or reconsider for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992). Discretionary decisions of the BIA will not be disturbed unless they are found to be arbitrary, irrational, or contrary to law. *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004).

## III.

Danu asserts that the BIA's recognition in its October 3, 2003 decision that Danu's lack of notice of the August 2, 2001 decision created an exceptional circumstance requiring reissuance of that decision to permit voluntary departure is logically inconsistent with the BIA's earlier denial (February 28, 2003) of her Motion to Reopen for purposes of NACARA suspension on grounds that said motion was untimely. Danu asserts that the same circumstance of lack of notice prevented the untimely filing of the motion to reopen for NACARA relief.

6

We recognize that motions to reopen are granted only under compelling circumstances and that the granting of the same is within the broad discretion of the Attorney General. *Guo*, 386 F.3d at 561 (citing *Doherty*, 502 U.S. at 323). This case presents such compelling circumstances given the findings regarding Danu's lack of notice of the August 2, 2001 decision made within the October 3, 2003 BIA decision and the arbitrariness of the relief fashioned for Danu as a consequence of those findings.

In the October 3, 2003 decision, the BIA found that Danu had not received timely notice of the August 2, 2001 final order of deportation. As a result, and as the BIA noted, Danu was deprived of the opportunity to voluntarily depart and now faced a lengthy bar from returning to the United States. The BIA acknowledged the existence of exceptional circumstances given the lack of notice, granted the motion to reopen, and reissued its August 2, 2001 decision all to permit Danu the right of voluntary departure.

The record is clear that Danu also desired reconsideration of the BIA's February 28, 2003 decision holding that her motion to reopen regarding NACARA suspension of deportation was untimely. Yet, despite its findings in the October 3, 2003 decision that Danu was deprived of timely notice of the August 2, 2001 decision, the BIA arbitrarily limited Danu's relief to voluntary departure. We conclude, however, that the findings relating to untimely notice supporting the BIA's grant of the motion for reconsideration and reissuance of the August 2, 2001 decision to permit voluntary departure likewise support the requested remedy of permitting Danu to proceed with her

7

claim for NACARA suspension of deportation. Consequently, the BIA abused its discretion in denying Danu the opportunity to pursue her claim for NACARA suspension of deportation.[2]

We have considered all of the arguments of the parties and conclude that no further discussion is necessary. We hold that the BIA abused its discretion in denying Danu's Motion to Reconsider its February 28, 2003 decision to the extent that the decision denied Danu's request to seek suspension of deportation under NACARA. Consequently, Danu should be permitted to proceed with her claim for suspension of deportation under NACARA. Accordingly, the Petitions at Nos. 03-4255 and 03-1657 will be granted.

_____

[2]We note that in the October 3, 2003 decision, the BIA indicated that Danu had not demonstrated ineffective assistance of counsel for their failure to inform her of the availability of NACARA relief. The BIA commented that in order to qualify for suspension relief and voluntary departure, Danu must demonstrate good moral character. The decision indicates that should the Immigration Court have considered this issue, there was potential that Danu would have been found ineligible for both given the possibility that she could be found to have engaged in a fraudulent marriage. However, this analysis is undercut by the BIA's fashioning of relief in the form of voluntary departure, for which there is an element of good moral character. Moreover, in its February 28, 2003 decision, the BIA indicated that Danu was *prima facie* eligible for suspension relief.