**Lan Zheng DONG**

v.

**\*Alberto GONZALES, Attorney General of the United States, Respondent \*(Amended pursuant to F.R.A.P. 43(c)).**

No. 04–4018.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 29, 2005.

Decided July 29, 2005.

Thomas V. Massucci, New York, NY, for Lan Zheng Dong.

Douglas E. Ginsburg, John D. Williams, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Alberto Gonzales.

Before ROTH, RENDELL and BARRY, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

### I. Factual and Procedural Background

Lan Zhen Dong seeks review of the Board of Immigration Appeal's ("BIA's") denial of her second motion to reopen. As we write only for the parties, we include only the factual and procedural background necessary to our decision. Dong is a Chinese national who entered the United States on October 16, 1998 without proper documentation. Accordingly, the former INS commenced removal proceedings against her on October 17, 1998 pursuant to the Immigration and Naturalization Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)]. Dong conceded removability, and on April 5, 1999, she filed an application for asylum and withholding of removal. In her application, Dong averred that after she had given birth to her son in 1988, she was subjected to forced insertion of an intrauterine device ("IUD"). In 1998, Dong sought private medical treatment to have the device removed due to the pain it caused. Fearing she would be subjected to the insertion of another IUD, she fled to the United States in 1998. The Immigration Judge ("IJ") denied Dong's application based on his belief that she was not credible. In coming to this conclusion, the IJ found that she was "unable to respond to the questions posed and she merely repeated the story that she apparently had learned as the story that should be told in court."

On December 27, 1999, Dong filed an appeal with the BIA. In response, the BIA requested that she supplement her brief so as to fulfill the requirement that she provide detailed reasons for her appeal. Dong never did this, and the BIA dismissed the appeal based on her procedural failure. Dong never sought review of that order with this Court. One year later, on February 22, 2003, Dong filed a motion to reopen the removal proceedings with the BIA. As grounds for reopening proceedings, Dong claimed that she was now subject to sterilization under China's one-child policy as she had given birth to a second child while in the United States. The BIA denied her motion to reopen based on its determinations that her motion was untimely, the 2001 birth of her second child was not new evidence, and, in any event, she failed to establish a prima facie case for relief. Again, Dong failed to appeal the BIA's order to this Court.

In June 2004, Dong filed a second motion to reopen the removal proceedings. As grounds for denying her second motion, the BIA determined that her motion was untimely and could not find that "the new evidence submitted by the respondent reflect[ed] 'changed circumstances' such that reopening [was] warranted in this case." Dong now seeks review of the BIA's denial of her second motion to reopen.

### II. Jurisdiction and Standard of Review

The BIA had jurisdiction over Dong's motion to reopen pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.53. Pursuant to 8 U.S.C. § 1252(a)(1), we have exclusive jurisdiction to review the BIA's denial of a motion to reopen removal proceedings.

Our Court reviews the BIA's denial of a motion to reopen for abuse of discretion. *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir.2004) (citing *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823

(1992)). Accordingly, the BIA's decision to deny Dong's motion to reopen should be affirmed unless "arbitrary, irrational, or contrary to law." *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir.1994). Finally, our Court lacks jurisdiction to reverse factual findings made by the BIA "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### III. Discussion

Dong asserts that in rejecting her untimely and successive second motion to reopen, the BIA abused its discretion when it failed to properly take into consideration new evidence showing the likelihood she would be subjected to forced sterilization if removed to China. A motion to reopen proceedings to apply for asylum is excepted from the time and numerical limitations if it is "based on changed circumstances arising in the country of nationality ..., if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. 1003.2(c)(3)(ii); *see also* 8 U.S.C. § 1229a(c)(7)(C)(ii).[1] Dong asserts that she met the conditions required for reopening when she presented the BIA with Dr. John Aird's newly revised affidavit from May 2003 ("Aird Affidavit 2"), concerning Chinese family planning programs.[2]

Dong describes the two affidavits: " 'Aird Affidavit 1' is a somewhat generalized analysis of the history and methods of the Chinese family planning program.... 'Aird Affidavit 2' deals specifically and explicitly with the issue of how Chinese family planning authorities deal with Chinese

citizens who have foreign-born children." (Blue Brief at 13–14.) In Aird Affidavit 2, Dr. Aird asserts that Chinese officials have treated and presently treat Chinese citizens with foreign-born children in a similar manner to those with Chinese-born children. He quotes the U.S. State Department's Bureau of Democracy, Human Rights and Labor's ("BDHRL's") 1998 report entitled "China: Profile of Asylum Claims and Country Conditions": " 'a person who conceived a second child without approval while on a student visa or visitor visa would be subject to the same penalties that a resident in China must bear.' " Dr. Aird further explains:

> Presumably Chinese who entered the U.S. illegally and had no visa at all would also be subject to the standard provisions. Thus most of the Chinese asylum applicants in the U.S. subject to forcible repatriation would not, even under these terms, escape the punishments that apply to Chinese couples who violate the policy in China.

Though he hints that some tightening of the family planning program may have occurred recently, he presents no specific evidence that any conditions relating to how Chinese officials treat citizens who exceed the one-child limit have materially changed within China since 1998, the date of Dong's initial proceeding before the IJ. Rather, the information that has changed is the focus of Dr. Aird's writing: he now specifically addresses an issue, the treatment of Chinese citizens who have foreign-born children, that he previously did not include in his affidavit.

Thus, Dong's argument is unpersuasive. The BIA, in its decision, stated that "the

---

**1.** Although it was not substantively amended, the cited provision was recodified by the Real ID Act of 2005. Prior to May 11, 2005, it was found at 8 U.S.C. § 1229a(c)(6)(C)(ii).

**2.** Dr. Aird's original affidavit ("Aird Affidavit 1") was presented by Dong in her first motion to reopen in 2002.

mere fact that the respondent wishes to present further updated information regarding country conditions to reinforce the original claim as well as [her][3] initial motion does not allow [her] to circumvent the time and number limitations on motions to reopen when the evidence is used to support the previous claim, not to establish changed country conditions." This reasoning is valid and the BIA's decision to deny the motion is not an abuse of discretion.

Dong further claims that she meets the criteria for reopening because Aird Affidavit 2 was not available at the time of Aird Affidavit 1. Though Dr. Aird's articulation on the topic of Chinese family planning authorities' treatment of Chinese citizens with foreign-born children was not available at the time of his first affidavit, many of the sources he later referenced in his second affidavit were available before 2000. Thus, we cannot find that information regarding the policy of Chinese officials towards citizens with foreign-born children was unavailable at the time of Dong's earlier proceedings.

IV. Conclusion

Accordingly, we will deny the petition for review.

---

3. In its decision to deny Dong's second motion to reopen, the Board repeatedly used masculine pronouns to refer to Dong. Due to the basis of Dong's asylum claim, the fear of forcible insertion of an IUD, we find this mislabeling to be disconcerting.