OPINION
BARRY, Circuit Judge
Ardían Tahiraj, a native and citizen of Albania, petitions for review of a February 9, 2004 final order of the Board of Immigration Appeals (“BIA”). The BIA dismissed Tahiraj’s appeal from an Immigration Judge’s (“IJ”) decision denying Tahiraj’s applications for asylum, withholding of removal, and protection under the Convention Against Torture. The BIA also denied Tahiraj’s motion to remand the case to allow him to submit additional evidence. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and will deny the petition.
I.
We will limit our factual discussion to those events relevant to our decision. Tahiraj was born in Albania in 1970. According to his testimony, he formally joined Albania’s Democratic Party on August 4, 1994, although he became an active supporter of that party in 1990. In 1990, Tahiraj participated in a demonstration in his hometown of Patos in support of a student movement. When government agents intervened to end that demonstration, Tahiraj was struck by a government agent and lost consciousness. He testified that he was arrested and brought to a police station, where he was interrogated and mistreated by both a police officer and a member of the Sigurimi, Albania’s secret police.
Tahiraj also claimed that, beginning with the March 22,1992 election, he served as a campaign worker for the Democratic Party. He wrote propaganda, worked on the campaign team of a party official, and served as an election observer. While campaigning for the June 29, 1997 elections, Tahiraj asserted, he and his cousin, Zihni Delibashi, were riding in a caravan of cars behind a police escort when the caravan was attacked by machine gun fire and Delibashi was shot. Though the caravan had been transporting the party official to a meeting, it turned back, returned the official to his office, and brought Delibashi to a hospital.
According to Tahiraj, he remained active in the Democratic Party, serving as an election monitor for an October 1, 2000 mayoral election. After refusing to certify that election because of voting irregularities, Tahiraj was arrested by the police and allegedly beaten, threatened, and held for one night. Tahiraj was again arrested by police on October 16, 2000. He claimed that on this occasion he was beaten and held along with other individuals who, like him, had peacefully protested a celebration for a former dictator. During a ten-hour detention, the police cuffed him, urinated on his face, and threatened to kill him if he “talked back”.
Ultimately, Tahiraj obtained a fake passport and fled Albania on November 4, 2000, claiming that his life was in danger and that he would be killed if he returned. Tahiraj testified that, after he left Albania, his wife received several threats after refusing to reveal his whereabouts, including a threat that their son would be kid *629 napecl.[1] On June 25, 2001, Tahiraj applied for asylum with the former Immigration and Naturalization Service (“INS”). After concluding that he had failed to prove eligibility for asylum, INS referred the case to the IJ for a hearing.
In a thirty-six page opinion, in which the most careful consideration was given to the issues before him, the IJ denied Tahiraj’s application and ordered him removed. The IJ stated that while he was not inclined to make an adverse credibility finding, he was concerned with Tahiraj’s failure to corroborate certain aspects of his testimony. Specifically, the IJ observed that statements submitted by both Tahiraj and his wife failed to mention the threats which were allegedly made to his wife after Tahiraj left Albania. The IJ made “a favorable credibility finding with a caveat that the [IJ] has some credibility concerns with regard to the alleged threats communicated through respondent’s wife.” App. at 32 — 83.
Despite crediting much of Tahiraj’s account, the IJ concluded that Tahiraj’s “brief detentions” and attendant “mistreatment” in October 2000 did not support a finding of past persecution and the detention in 1990 did not trigger the presumption of future persecution because “it was perpetrated by a prior regime that is no longer in power.” Id. at 33. The IJ also concluded that Tahiraj “has not proven that it is more likely than not that he would be tortured by or at the instigation of or with the consent or acquiescence of a public official” should he return to Albania. Id. at 33-34. In coming to this conclusion, the IJ considered and relied on the Human Rights Watch Report for 2002 and the Country Report on Human Rights Practices for 2001. See id. at 34-37. Although he believed it was a “relatively close call,” the IJ found that Tahiraj would not be persecuted beyond “mere harassment and brief detentions” should he return to Albania and participate in opposition politics. Id. at 39.
Returning to the issue of the continuing threats supposedly received by Tahiraj’s wife, the IJ noted that there was no mention of any such threats in Tahiraj’s application for asylum, in his wife’s letter, or in his sworn supplemental statement, which, he stated, he submitted prior to the hearing to provide “ ‘more details about [his] asylum claim’ ” and “ ‘to inform the Court about new political developments in Albania which [we]re relevant to [his] asylum claim.’” Id. at 41. Having determined that Tahiraj’s testimony regarding continuing threats should have been corroborated, the IJ concluded that he could not give that testimony significant weight.
On appeal, the BIA concluded that Tahiraj should have corroborated not only his testimony regarding the continuing threats made to his wife, but also his testimony regarding his two arrests and detentions in October 2000. Id. at 5 (citing Abdulai v. Ashcroft, 239 F.3d 542 (3d Cir.2001)).
He was able to obtain a June 2002 statement from his wife, a June 2002 “certification” from an official in the Democratic Party, a June 2002 declaration from the leader of the Democratic Party in his area until 1994 and a member of Parliament in 1996, and testimony from his cousin who was wounded in the 1997 shooting incident. These are persons who should be familiar with some or all of the essential facts either directly or at least through other persons. Hearsay evidence is admissible in immigration proceedings.
*630 Id. at 5. The BIA also concluded that in addition to his failure to corroborate the threats and the October 2000 arrests and detentions, Tahiraj’s explanations for failing to do so were “unconvincing”:
Even though he testified that persons have threatened his wife, and even threatened to kidnap his son, to find out where he is, his only explanation for the lack of any reference to this as well as to the two arrests and detentions by his wife was that he did not ask her to write the whole story. In addition, it makes no sense that the Democratic Party official would mention the confrontation with the Socialist Party militants and the police during the 2000 election, but neglect to mention the subsequent arrest and detention because he did not believe it to be “important.” Furthermore, the respondent did not claim that the member of parliament did not know about the respondent’s arrests in 2000, but claimed that the official was not asked to write “further information.” In short, several persons had the opportunity to refer to significant events in the respondent’s life, but failed to do so.
Id. at 6.
Finally, the BIA denied Tahiraj’s motion for a remand to enable the IJ to consider an affidavit from Tahiraj’s wife claiming that she had received threatening, anonymous letters after Tahiraj left Albania, reasoning that Tahiraj had not adequately explained his failure to obtain this statement prior to the hearing before the IJ. This petition for review followed.
II.
The crux of Tahiraj’s argument to us is that, given the IJ’s favorable credibility determination, the corroborating evidence he produced was sufficient to sustain his burden of proof as to a well-founded fear of future persecution.[2] We find this argument unpersuasive.
In Abdulai v. Ashcroft, 239 F.3d 542, 551 (3d Cir.2001), we held that the BIA may require a credible applicant to provide evidence corroborating the specifics of his or her testimony if it is “ ‘reasonable’ to expect the applicant to do so.” “[I]f it would be reasonable to expect corroboration, then an applicant who neither introduces such evidence nor offers a satisfactory explanation as to why he or she cannot do so may be found to have failed to meet his or her burden of proof.” Id. However, before denying the applicant relief on this ground, the BIA must undertake a three-part inquiry:
(1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so.
Id. at 554 (quotation marks omitted) (citing In re S-M-J- 21 I. & N. Dec. 722 (1997)).
Here, the BIA cited Abdulai and discussed each requirement. It specified the particular aspects of Tahiraj’s testimony that one would reasonably have expected him to corroborate, noted that Tahiraj had not provided the requisite corroboration, and explained why his proffered reason for not providing corroboration was inadequate. This case is, therefore, distinguishable from cases such as Mulanga v. Ashcroft, 349 F.3d 123 (3d Cir.2003), where the *631 IJ failed to explain what evidence would reasonably be expected and neglected to provide the applicant with an opportunity to explain its absence. See id. at 136. See also Voci v. Gonzales, 409 F.3d 607, 617 & n. 7 (3d Cir.2005).
Having determined that there was no technical problem with the BIA’s analysis, we must review its conclusions. BIA precedent establishes that it is reasonable to expect an applicant to corroborate “facts which are central to his or her claim and easily subject to verification,” such as “evidence of [the applicant’s] place of birth, media accounts of large demonstrations, evidence of a publicly held office, or documentation of medical treatment.” In re S-M-J-, 211. & N. Dec. at 725. “The Board has also stated that it is generally reasonable to expect applicants to produce letters from family members remaining in the applicant’s home country.” Abdulai, 239 F.3d at 554. “[A]n applicant’s ability to obtain corroborating evidence may often depend on the social and political circumstances of a given country.” Id. at 555 n. 9.
The October 2000 arrests and detentions and the alleged threats were central to Tahiraj’s claim of fear of future persecution, especially in light of the conceded inadequacy of proof of past persecution. Furthermore, the corroborating evidence was easy to obtain. Tahiraj asked his wife to write a statement and, wholly apart from the fact that one would have expected her on her own to lead off with the threats made to her, Tahiraj could simply have asked her to mention those threats and his arrests and detentions in October 2000. The Democratic Party officials could also have been asked to mention the October 2000 incidents. Tahiraj’s cousin testified in detail regarding the June 1997 shooting and, again, could have been asked to testify as to the October 2000 incidents, even if his knowledge was based on hearsay.[3]
Finally, we agree that Tahiraj’s explanations as to why he did not provide any corroboration of these incidents are less than convincing. It is not enough to say that the party officials did not deem these incidents to be important enough to include. Nor is Tahiraj’s argument that it is generally difficult to obtain detailed statements from people outside the country particularly persuasive, considering that he successfully obtained statements from three people still living in Albania.[4]
Tahiraj makes much of what he did produce: (1) his passport, (2) his family certificate, (3) birth certificates for him and his wife and son, (4) his Democratic Party membership card, (5) a certificate from the Patos branch of the Democratic Party, (6) a newspaper article referencing the June 1997 shooting, (7) tax documents, *632 (8) a declaration by a former Democratic Party official stating that Tahiraj campaigned with him, (9) a “certification” from a Democratic Party leader stating that Tahiraj was a member of the electoral commission in October 2000 and that Tahiraj was “confronted” by police and militants but “defended the votes for a fair process,” and (10) his wife’s letter, previously discussed. None of this evidence, however, corroborates Tahiraj’s account of the arrests and detentions in October 2000 or the continuing threats made to his family. Moreover, besides his wife’s statement that Tahiraj “has even been hit and mishandled,” none of the evidence describes physical abuse, arrest, or detention of any kind. Indeed, even Tahiraj does not allege that he was injured, much less that he suffered injuries requiring medical treatment. See Voci, 409 F.3d at 615; Chen v. Ashcroft, 381 F.3d 221, 234-35 (3d Cir. 2004).
We also reject Tahiraj’s argument that the BIA erred when it denied his motion to remand. The BIA treats motions to remand as motions to reopen. In re Coelho, 20 I. & N. Dec. 464, 471 (1992). “A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered ... was not available and could not have been discovered or presented at the former hearing.” 8 C.F.R. § 1003.2(c)(1); see also INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) (listing “failure to introduce previously unavailable, material evidence” as one of “at least” three independent grounds on which the BIA might deny a motion to reopen); In re Coelho, 20 I. & N. Dec. at 472 (same, citing 8 C.F.R. § 1003.2 and Doherty). Because Tahiraj has not demonstrated that his wife’s follow-up affidavit was previously unavailable, we conclude that the BIA properly denied Tahiraj’s motion.
III.
For the foregoing reasons, the petition for review is denied.

. Tahiraj’s wife, Majlinda, and son are now lawful permanent residents of the United States, having won an immigrant visa through the Diversity Visa program.

. The government contends that Tahiraj has waived any claim to eligibility for asylum based on past persecution, withholding of removal, or protection under the CAT by failing to raise any of these claims in his opening brief. In light of our disposition of this case, we decline to address this issue.

. Tahiraj argues that the BIA erred in requiring him to corroborate his claim with hearsay statements, but it did no such thing. The clear implication from the BIA’s statement is that hearsay was one way Tahiraj could have tried to corroborate his claim.

. Tahiraj explains only why he did not obtain corroborating evidence, not why he could not. The test we upheld in Abdulai requires an applicant who fails to produce reasonable corroborating evidence to explain why he or she “cannot” do so, not why he or she "did not” do so. 239 F.3d at 551. In any event, our ability to review Tahiraj’s argument in this regard appears to be largely foreclosed by the Real ID Act. The Act provides that "[n]o court shall reverse a determination made by a finder of fact with respect to the availability of corroborating evidence ... unless the court finds ... that a reasonable finder of fact is compelled to conclude that such corroborating evidence is unavailable.” Real ID Act of 2005, § 101(e), Pub. L. No. 109-13, 119 Stat. 231, 305, to be codified at 8 U.S.C. § 1252(b)(4). We see no compelling reason to reverse any such findings in this case.