[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2006
THOMAS K. KAHN
CLERK

No. 05-15906
Non-Argument Calendar

_____

BIA Nos. A79-101-707 & A79-101-708

FERNANDO GONZALEZ-MEJIA,
MARTHA GONZALEZ-MORENO,
CAMILO GONZALEZ-GONZALEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 30, 2006)**

Before BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Fernando Gonzalez-Mejia, his wife, Martha Gonzalez-Moreno, and their son, Camilo Gonzalez-Gonzalez, natives and citizens of Colombia, petition for review of the Board of Immigration Appeals' decision and order dismissing their appeal from the immigration judge's order denying their motion to reopen and to rescind the in absentia order of removal entered against them. Because of the deferential standard of review that we must apply in this case, we deny the petition.

**I.**

In March 2001, petitioners entered the United States in Miami, Florida. The former Immigration and Naturalization Service issued Notices to Appear charging them with removability. In April 2002, petitioners appeared before an IJ in Miami and conceded removability. Petitioners filed an application for asylum and withholding of removal on which they listed their address in Port St. Lucie, Florida. An asylum hearing was eventually set for April 22, 2003.

On April 8, 2003, petitioners filed a change of address notice listing their new address in Simpsonville, South Carolina. They also filed a motion for a continuance in order to obtain additional documentation in support of their asylum application and because of their attorney's increased workload. The IJ granted the motion and reset the hearing for January 2004.

In September 2003, Gonzalez-Moreno suffered a severe thalamic stroke. In a report filed with petitioners' later motions, Gonzalez-Moreno's treating

2

physician, Dr. Courson Cunningham, stated that the stroke had caused her to experience "diplopia, dizziness and [a] general sense of weakness." At a doctor's visit in October, Gonzalez-Moreno "was still very impaired, came in a wheelchair, was quite emotional and tearful with persistent nausea and continu[ed] to have double vision and [was] just feeling terrible." In the months following the stroke, Gonzalez-Moreno received physical and occupational therapy and was prescribed an antidepressant.

In January 2004, the IJ sua sponte recused himself from the case. On February 4, 2004, petitioners' Miami-based attorney received notice that the hearing had been rescheduled for April 6, 2004 in Miami.

On March 11, 2004, petitioners filed a motion for change of venue, requesting that their case be moved to an immigration court with jurisdiction over their residence in South Carolina. In support of their motion, petitioners stated that Gonzalez-Gonzalez attended school in South Carolina, that Gonzalez-Mejia worked in South Carolina, and that Gonzalez-Moreno had recently suffered a stroke and was receiving therapy in South Carolina. Petitioners also stated that they had consulted with an attorney from the Department of Homeland Security, and that DHS did not oppose the motion to change venue.

Attached to their change of venue motion, petitioners filed a February 25, 2004 letter from Dr. Anita McQuillen, a clinical psychologist who had been

3

treating Gonzalez-Moreno for over three months. Dr. McQuillen stated that she had seen Gonzalez-Moreno "weekly for hour-long individual psychotherapy sessions . . . to address severe post-stroke depression" and that there was a "positive prognosis." However, Dr. McQuillen stated that Gonzalez-Moreno had "a number of psychosocial stressors that serve to complicate treatment" and that "[h]er recovery will be facilitated by the extent to which additional stressors such as travel can be reduced or eliminated."

Petitioners also filed the above-referenced report by Dr. Cunningham. Dr. Cunningham noted on December 9, 2003 that Gonzalez-Moreno still complained of blurred vision, trouble reading, vertigo, and "general fatigue." However, Dr. Cunningham stated that in the two months since the stroke, Gonzalez-Moreno was "markedly improved." Dr. Cunningham stated that Gonzalez-Moreno was able to "walk[] in . . . without much difficulty," that she had "a near normal neurologic exam," and that he expected that "over the next few months . . . she will be able to return to employment." Dr. Cunningham directed Gonzalez-Moreno to take aspirin and to perform exercises to help with her vertigo.

On March 31, 2004, petitioners filed an emergency motion for a continuance on the basis of Gonzalez-Moreno's medical condition. Attached to this motion, petitioners filed another letter dated March 30, 2004 from Dr. McQuillen. In it, Dr. McQuillen stated that Gonzalez-Moreno "remains quite fragile" and that "[f]or her

4

to avoid travel at this time . . . is essential to her recovery." Dr. McQuillen "strongly urge[d] that any business be postponed until [Gonzalez-Moreno] has recovered further and has built some endurance both physically and psychologically."

On April 1, 2004, the IJ denied petitioners' motions for change of venue and for a continuance. The IJ explained: "The Motion is untimely. Respondents have been in proceedings on the Miami Docket since October 2001. Numerous continuances and other delays have already extended these proceedings beyond the Court's case completion guideline requirements."

On April 6, 2004, petitioners failed to appear at the asylum hearing in Miami. Because petitioners had conceded removability and had received written notice of the hearing through their counsel in Miami, the IJ entered an in absentia removal order against petitioners in accordance with 8 U.S.C. § 1229a(b)(5)(A). An in absentia removal order may be rescinded if, within 180 days of the order, the alien moves to reopen the proceedings and demonstrates that the failure to appear was because of "exceptional circumstances." Id. § 1229a(b)(5)(C)(i). Exceptional circumstances are defined as circumstances "beyond the control of the alien" and include "serious illness or death of the spouse, child, or parent of the alien." 8 U.S.C. § 1229a(e)(1).

5

On June 28, 2004, Gonzalez-Mejia filed pro se a motion to reopen petitioners' asylum proceedings. He argued that his wife had been very sick after her stroke and that "[i]t is unconscionable for me to abandon my family to go attend the hearing when the court could have continued the case." He referenced Dr. McQuillen's second letter stating that Gonzalez-Moreno should not travel and opined that "Doctors know more [than] lawyers and judges about medical conditions." Gonzelez-Mejia also attached to his motion a letter dated April 2, 2004 from Dr. Jennifer Gilroy. In it, Dr. Gilroy stated that she had regularly treated Gonzalez-Moreno for anxiety about "her social situation," that Gonzalez-Moreno was "experiencing extreme financial difficulties" because of her inability to work and her medical bills, and that these factors "make it difficult for [Gonzalez-Moreno] to travel at this time."

The IJ denied the motion to reopen on July 6, 2004. The IJ explained:

The Court had carefully considered Respondents' circumstances when it denied Respondents' untimely motions to change venue and continue their cases. There had been numerous continuances and other delays in this case. Respondents were well aware of their scheduled hearing date and elected to ignore it. This case had a complicated procedural history and much investigative work was done in this jurisdiction. The Court notes that Respondents have been in proceedings since the fall of 2001. They had local counsel. There were no health issues relating to the lead respondent. The Court's docket is presently out until July 2005. Thus, rescheduling results in another year delay. The Court and DHS counsel had prepared to hear Respondents' claims. Respondents had been advised of the

6

consequence of failure to appear and failed to appear at their own peril.

Petitioners appealed to the BIA, which affirmed the IJ's order denying their motion to reopen and rescind and dismissed their appeal on September 28, 2005. The BIA reviewed each of the four letters submitted by petitioners and determined that none of them prohibited Gonzalez-Moreno from traveling. The BIA concluded that petitioners had "failed to establish that [Gonzalez-Moreno's] illness was of such a nature in April 2004, that [her] condition prevented them from traveling to their immigration hearing." The BIA also stated that Gonzalez-Mejia, the lead respondent, had "presented no evidence, aside from his own claim, that he was unable to travel to the hearing."

## II.

Petitioners appeal from the BIA's decision and order. They contend that the BIA abused its discretion when it denied their motion to reopen and rescind because their absence from the April 6, 2004 hearing in Miami was due to exceptional circumstances as defined in 8 U.S.C. § 1229a(e)(1). Specifically, they argue that because of Gonzalez-Moreno's serious and debilitating stroke, which had lingering side effects up to and including the day of the hearing, they were unable to travel from their home in South Carolina to the proceeding in Miami.

7

Motions to reopen deportation proceeding are disfavored because, "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323, 112 S. Ct. 719, 724–25 (1992). We review the denial of a motion to reopen only for abuse of discretion. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1340 (11th Cir. 2003). Our review "is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985) (quotation omitted). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." Mickeviciute v. INS, 327 F.3d 1159, 1162 (10th Cir. 2003) (quotation omitted).

In its September 28, 2005 decision and order, the BIA examined each of the four medical assessments of Gonzalez-Moreno's condition produced by petitioners. The BIA determined that her condition at the time of the hearing was not so serious as to prevent her from traveling to the asylum hearing in Miami and concluded that petitioners had not demonstrated extraordinary circumstances to excuse their failure to appear. The BIA also determined that Gonzalez-Mejia was not prohibited from traveling to Miami for the asylum hearing even if his wife was.

8

The BIA's reasoning and the result reached are supported by the record. None of the four medical assessments indicate that Gonzalez-Moreno was physically unable to travel to the hearing in April 2004 or that her condition was so serious that Gonzalez-Mejia could not leave her in order to attend the hearing. In fact, Dr. Cunningham's report several months earlier indicates that although she was weak, Gonzalez-Moreno was able to walk and was not impaired to the point of being unable to travel. Dr. Cunningham even stated that he believed Gonzalez-Moreno would be able to return to work within a few months. The focus of Dr. McQuillen's letters is on the need for Gonzalez-Mejia to avoid unnecessary stress, including travel, but she does not reach a conclusion that Gonzalez-Moreno is medically unfit to travel. Finally, Dr. Gilroy's letter concerns factors unrelated to whether Gonzalez-Moreno was physically able to travel to the April 2004 hearing and is to that extent irrelevant. In addition, we note that Gonzelez-Mejia knew when he moved to South Carolina that his case was pending in Miami and that any hearing would be there.

In sum, the BIA, in the exercise of its substantial administrative discretion, made a decision that is not an abuse of discretion. Its decision is neither arbitrary nor capricious. Accordingly, we conclude that the BIA did not abuse its discretion in affirming the IJ's denial of petitioners' motion to reopen their proceedings and rescind the in absentia removal order.

9

**PETITION DENIED.**