.                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

NOS. 08-2351 and 08-3902

———

ANDRI SUBRATA,
                              Petitioner
                 v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A079-474-816)
Immigration Judge:  Hon. Walter A. Durling

———

Argued April 13, 2010

Before:  SLOVITER and NYGAARD, Circuit Judges, and RESTANI[*], Judge

(Filed: April 30, 2010)

———

Victor P. Filippini, Esq.   (Argued)
Robert W. Vyverberg, Jr., Esq.
Holland & Night
131 South Dearborn Street
30th Floor
Chicago, IL 60603

        Attorneys for Petitioner

———————————

        [*]   Hon. Jane A. Restani, Chief Judge, United States Court
     of International Trade, sitting by designation.

Edward J. Duffy, Esq.
R. Alexander Goring, Esq.   (Argued)
United States Department of Justice
Office of Immigration Litigation, Civil Division
Washington, D.C. 20044

        Attorneys for Respondent

---

OPINION

---

SLOVITER, *Circuit Judge*.

Before us is the petition of Andri Subrata for review of two decisions of the Board of Immigration Appeals ("BIA"):  one reversing the decision of the Immigration Judge ("IJ") to defer Subrata's removal under the Convention Against Torture ("CAT") and the other denying Subrata's motion to reopen.

**I.**

Subrata, an ethnically-Chinese Christian who is a native and citizen of predominantly-Muslim Indonesia, was granted asylum in 2002.  After he was convicted of an aggravated felony drug trafficking offense three years later, the Department of Homeland Security ("DHS") filed a motion to terminate Subrata's asylum status, which was granted by an IJ in Baltimore, Maryland.  Subrata filed an application for withholding of removal on the ground that his offense was not a "particularly serious crime" under INA § 241(b)(3).  He also sought relief under the CAT.

Following a hearing at which Subrata testified that he feared he would be detained and tortured if he were removed to Indonesia, the IJ ordered him removed because his criminal conviction was for a "particularly serious crime." App. at 8. Nevertheless, the IJ granted deferral of removal under the CAT, finding that Subrata was likely to be detained, interrogated, and tortured upon return to Indonesia because of his status as a criminal deportee.

The IJ reasoned that it would be "ignoring common sense to find" that Indonesia was unlikely to detain and interrogate Subrata upon his arrival in Indonesia. App. at 13. He added that "Indonesia has a sordid past" with regard to "persecuting, torturing and committing serious human rights violations. . . ." App. at 13. Therefore, the IJ found that Subrata "met his burden of proof of encountering likely prospective and intentional infliction of severe pain or suffering upon his removal to Indonesia. . . ." App. at 15 (referring to the definition of "torture" in 8 C.F.R. § 1208.18(a)(1)).

DHS appealed the IJ's order granting Subrata deferral of removal under the CAT. The BIA "conclude[d] that the [IJ] erred in finding that [Subrata] would be detained, and more likely than not would be tortured upon return to Indonesia." App. at 6. In addition, the BIA noted that, although it did not view the IJ's ruling as one of fact, it "would find the [IJ]'s ruling to be clearly erroneous." App. at 5 n.1.[1]

---

[1] We have jurisdiction to review the BIA's order of removal under 8 U.S.C. § 1252(a)(1). Section 1252(a)(4) provides us with exclusive jurisdiction over claims under the CAT. The BIA's

3

**II.**

Subrata's principal contention is that the BIA "[e]ngag[ed] in improper de novo review of the [IJ's] factual findings" that Subrata would likely be detained and tortured upon removal to Indonesia. Pet'r's Br. at 17. In *Kaplun v. Attorney General*, decided after briefing in this case, we held that when the BIA reviews an IJ's determination regarding whether torture is likely if an alien is removed to his or her country of origin, it must compartmentalize the "two distinct parts to the mixed question. . . ." *See* ___ F.3d ___, 2010 WL 1409019, at *9 (3d Cir. 2010). The two parts are: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" *Id.* Because the first question is factual, the IJ's determination as to what is likely to happen to the petitioner if removed is subject to clear error review by the BIA. *Id.* at *11. Even so, "whether imprisonment, beating, and extortion are severe enough to rise to the level of torture is a legal question." *Id.* at *9. As such, the IJ's determination pertaining to that question may be reviewed de novo. *Id.*

Although the BIA's statement that its standard of review with regard to the IJ's likelihood-of-torture finding was "a prediction that [it] review[s] de novo" is incorrect under *Kaplun*, that decision does not require us to grant Subrata's petition for review. App. at 5 n.1. This is because the BIA also noted that it would find the IJ's ruling to be

---

determinations regarding the likelihood of future persecution or torture are reviewed for substantial evidence. *Wang v. Ashcroft*, 368 F.3d 347, 350 (3d Cir. 2004).

4

clearly erroneous, and that is the standard required by *Kaplun*. Therefore, we need not remand for reconsideration in light of *Kaplun*.

Aside from Subrata's own testimony that "he will be viewed as a traitor by the Indonesian government because he was granted asylum in the United States," which even the IJ acknowledged "lack[ed] corroboration" in the record, App. at 10, the IJ's findings were based on "background evidence" provided by Subrata, App. at 11. Such evidence included State Department Country Reports suggesting that Indonesia generally has a troubling history with regard to human rights violations. However, the IJ pointed out that more recent evidence was "somewhat more reassuring," as it suggested that Indonesia "has been making strides to ameliorate past human rights violations. . . ." App. at 13. The IJ's determination that Subrata would likely be detained and tortured simply because of his criminal deportee status had no support in the record. None of the documents provided by Subrata supported the finding that he was personally at risk of detention or torture. Inasmuch as "[t]he burden of proof is on [Subrata] . . . to establish that it is more likely than not that *he . . . would be tortured* if removed," 8 C.F.R. § 208.16(c)(2) (emphasis added), we agree with the BIA that the IJ's determination was plain error. Thus, Subrata's principal argument fails for insufficient evidence.

Finally, we have no reason to overturn the BIA's denial of Subrata's motion to reopen. Motions to reopen are granted only under compelling circumstances and we review the denial of a motion to reopen for abuse of discretion. *Guo v. Ashcroft*, 386 F.3d

556, 561-62 (3d Cir. 2004) (citing *INS v. Doherty*, 502 U.S. 314, 323 (1992)). Although Subrata submitted additional documentary evidence reflecting Indonesia's human rights abuses, the BIA correctly found that such evidence was "cumulative to [Subrata's] original claim and does not show materially changed circumstances in Indonesia." App. at 64. In its merits opinion, the BIA assumed that torture was widespread in Indonesia but was not persuaded that Subrata himself faced detention or torture. The evidence Subrata submitted in support of his motion to reopen does not undermine that reasoning.

**III.**

For the above-stated reasons, we will deny review of the BIA's orders.