**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2821
_____

MEVLAN LITA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A098-690-014)
Immigration Judge: Henry S. Dogin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2011

Before:  BARRY, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed April 1, 2011 )
_____

OPINION
_____

PER CURIAM

　　　　Mevlan Lita ("Lita") petitions for review of the Board of Immigration Appeals'

final order of removal.  For the reasons that follow, we will deny the petition for review.

Lita, a native and citizen of Albania, is removable under Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an overstay. He applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming a fear of persecution on account of political opinion. Lita claimed that he and his family members were persecuted in Albania by members of the Socialist Party because of their activities on behalf of the Democratic Party. Following a merits hearing on August 10, 2005, the Immigration Judge denied relief, concluding that Lita was not credible because of omissions and inconsistencies in his case, and the lack of documentation. The IJ granted his application for voluntary departure and issued an alternate order of removal to Albania. On February 22, 2007, the Board of Immigration Appeals dismissed the appeal, concluding that there was no clear error in the IJ's credibility determination, 8 C.F.R. § 1003.1(d)(3)(i). The Board reasoned that the IJ properly rested his determination on material inconsistencies between Lita's testimony, his original asylum application, and his second application.

We denied Lita's petition for review on May 21, 2008, explaining that: "there were true and *numerous* inconsistencies in Lita's case for relief. His statements and testimony ... contain inconsistencies and omissions, which, taken together, call his credibility into question. Taken in isolation, each inconsistency noted by the Board might be considered minor.... But they are still inconsistencies in evidence or admissions involving the 'heart of the asylum claim....' When asked to explain, Lita gave weak and unconvincing reasons for the omissions and inconsistencies." Lita v. Att'y Gen. of U.S., 279 Fed. Appx. 115, 121 (3d Cir. 2008) (citation omitted). With regard to the issue of a

2

well-founded fear of persecution, we stated that the "2004 Country Report establishes the rise of the Democratic Party within Albania and does not cite instances of Democratic Party members being singled out for persecution, and Lita's uncle, a victim of past persecution, safely visited Albania in 2003." Id. at 121-22.

Lita failed to depart voluntarily. On November 24, 2009, he filed a motion to reopen removal proceedings, stating that he was applying for asylum based on changed conditions in Albania. Lita claimed that his parents had recently been threatened, that their property had been damaged, and that his father had been physically assaulted by members of the Socialist Party because of his family's continued activities in support of the Democratic Party. Lita attached the following items to his motion: (1) declaration of Ferit Lita dated 8/25/09; (2) declaration of Met Sufa; (3) declaration of Shpressa Lita; (4) second declaration of Ferit Lita; (5) declaration of Zyber Lita dated 8/20/09; (6) certification of Diber District Attorney Arben Nika; (7) declaration of Luljeta Lita; (8) 2008 State Department Country Report for Albania; (9) UK Border Agency Operational Guidance Note; and (10) photographs of a bullet-ridden car. The Department of Homeland Security opposed reopening proceedings.

On May 24, 2010, the Board denied the motion to reopen. The Board remarked first that the motion was 2½ years late, 8 C.F.R. § 1003.2(c)(2), and, in addition, that Lita had not addressed his credibility problem, notwithstanding that his current claim was essentially the same as his original claim. The Board went on to determine that Lita's new evidence reflected a continuation of "a high degree of conflict between the Socialist Party and the Democratic Party, especially in certain regions. These circumstances have

3

existed since the demise of Communism in the early 1990's." A.R. 2. The Board noted that the Democratic Party has continued to win elections for the majority of seats in the Albanian government. Thus, Lita's evidence of conflict between his father and the Socialists in 2008 and 2009, even if believed, reflected a continuation of events as they existed during the original proceedings, and did not reflect a change that would excuse the untimeliness of his motion to reopen. The Board also determined that Lita's evidence did not show that he is more likely than not to be subjected to torture by or with the consent or acquiescence of the Albanian government, "such that a change relevant to a claim under the Convention Against Torture has been demonstrated." See id. at 3.

Lita has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Lita contends in his brief on appeal that the Board abused its discretion by failing to consider and discuss all of his evidence submitted in support of his motion, which, if previously available, would have resulted in a favorable credibility finding and changed the outcome of his case. See Petitioner's Brief, at 8.

We will deny the petition for review. We review the Board's denial of a motion to reopen for abuse of discretion. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard of review, we will not disturb the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). "A motion to reopen proceedings shall not be granted unless it appears to the Board that

evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Id.

The "motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened," id. at 1003.2(c)(2), except that the time limitation does not apply where the alien seeks to "apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing," id. at 1003.2(c)(3)(ii). See also 8 U.S.C. § 1229a(c)(7)(C)(ii).

We conclude that the Board's determination that Lita failed to demonstrate changed country conditions sufficient to excuse his untimely motion to reopen was not arbitrary, irrational, or contrary to law. Under the standards we set forth in Zheng v. Att'y Gen. of U.S., 549 F.3d 260, 268 (3d Cir. 2008), the Board must explicitly consider any country conditions evidence that materially bears on an applicant's claim, see id. at 268. The declarations Lita attached to his motion did not show a change of conditions. A declaration from Lita's father's cousin, Zyber Lita, states that, on May 20, 2008, he saw Ferit Lita and he was bleeding from his nose and mouth. Ferit told Zyber that four Socialists had beaten him up on a bridge and threatened to kill him because he would not provide financial support for the Socialists' electoral campaign. A.R. 51. A declaration from police employee Met Sufa states that, on April 27, 2009, Lita's father met Sufa and reported the violence used against him by the Socialists of the Dypjake village. Sufa told

5

Lita's father that he could do nothing and that he should go to the trial attorneys' office to make a denunciation. See id. at 29. A declaration from Lita's mother states that, after Ferit Lita went to the trial attorneys' office to denounce the Socialists, powerful Socialists, on June 7, 2009, shot up their car and ruined it. They left a note stating that bad things would happen every time the family denounced the Socialists. Again, her husband went to the police to complain, this time with pictures of the bullet-riddled car. See id. at 33.

Lita also attached the State Department's 2008 Human Rights Report on Albania to his motion to reopen. It notes that parliamentary elections were held in 2005; they "only partly met international standards," but the political parties "operated without restriction or outside interference." See id. at 70. The Report notes that the Albanian police forces have a problem with unprofessional behavior and corruption, and "overall performance of law enforcement remained weak," id. at 65, but "the Ministry of Interior started a new recruiting system with standardized procedures" which was expected to improve the performance of the police, id.

The December 2, 2008 "Operational Guidance Note" on Albania, published by the United Kingdom, states that from 1997- 2005, Albania was ruled by the Socialist Party, but, in July, 2005, the Democratic Party won the parliamentary elections and the Democratic Party leader became prime minister. See id. 78, 87. The election failed to "fully meet international standards," but "was praised for bringing Albania's first rotation of power without significant violence in the post-Communist era." Id. at 78. Albania's political parties now "operate without restriction or outside interference." Id. at 87. The

6

Democratic Party is currently in power, and "although the authorities do not legislate against, prosecute or persecute opposition political parties[,] some rogue elements of [the Democratic Party's] local/regional organization may do so. However, there is no evidence … that individual members of any political party would not be able to access protection from the authorities should they need it." Id. Judiciary and law enforcement agencies remained "inefficient and prone to corruption," id. at 78, but "[t]hose claiming to face threats from political opponents should be able to seek protection from the authorities or internally relocate to escape a localized threat" from members of an opposing political party, id. at 87.

Lita's new evidence did not establish a change in conditions in Albania. In his initial asylum application, he claimed that his family had been persecuted by members of the Socialist Party because of their active support of the Democratic Party. In his motion to reopen, Lita asserted that his family members, most especially his father, continue to actively support the Democratic Party and that, as a result, his family continues to be harassed by supporters of the Socialist Party. The 2008 State Department Report and December, 2008 UK Operational Guidance Note indicate that the Democratic Party won the last parliamentary election in 2005, and that, while some political violence still occurs in Albania, the situation is probably improving, but certainly not deteriorating. During the original proceedings, the documentary evidence revealed similar conditions. We explained:

> [T]he Administrative Record contains the State Department's Country Report on Human Rights Practices for Albania for 2004. It states that municipal elections took place in 2003, and they met basic democratic

7

standards. The Democratic and Socialist parties held the majority of seats in the Parliament. The record also contains a State Department Profile of Asylum Claims and Country Conditions for Albania, which states that 1997 was the most chaotic year in Albanian history, but there have been no major outbreaks of political violence since 1998, and neither the Albanian government nor the major political parties engage in policies of abuse against their political opponents. There were, however, small-scale clashes between individual competing party supporters during the period from 2000-2003.

Lita, 279 Fed. Appx. at 118.

Thus, rather than showing a change in country conditions that provides him with new grounds for asylum, the evidence Lita proffered in his motion to reopen shows at most that country conditions and his father's circumstances remain essentially unchanged from what they were when Lita first filed his asylum application. Although the Board's discussion of the evidence was terse, it was sufficient. We are confident that the Board adequately reviewed the entire record in reaching its decision that Lita failed to meet his burden of proof, especially in light of the fact that Lita's claim had previously been denied on the basis of his lack of credibility and the newly proffered declarations did nothing to rehabilitate his credibility. Cf. Guo, 386 F.3d at 562 (prior adverse credibility finding for religious persecution claim was not relevant to subsequent motion to reopen asserting claim based on China's coercive population control policies).

For the foregoing reasons, we will deny the petition for review.

8